William G. Dodd, Charles G. Short, Thomas Lynch and
Ella Dodd,

*vs.*

Joseph A. Hart,

Overseer of Roads in Lewes and Rehoboth Hundred,
Sussex County.

*Sussex, March T.* 1900.

The Act of April 13, 1897, entitled "An Act appointing Commissioners
to straighten and widen the Public Road leading from Lewes,
beginning at or near the House of John S. Tindall, extending to
the Low Water-Mark of the Ocean," which provided for the ex-
ercise of the right of eminent domain, without notice to the owners
of property to be taken thereunder, and gave no opportunity
for a hearing, is unconstitutional and void.

Under the Fourteenth Amendment to the Constitution of the United
States, property may not be taken for laying out, opening, straight-
ening and widening a public road in this State, unless the act
under which land is to be condemned for that purpose, provides
for notice to the property owner, and gives him an opportunity
for a hearing upon the question of the damage to be suffered by
him,—in other words, the property owner is entitled to his "day
in court."

Where land is to be taken for laying out, opening, straightening and
widening a public road in the exercise of the right of eminent do-
main, an assessment of damages made by assessors or commis-
sioners, appointed for the purpose under legislative authority,
who are to view the estates, and levy the expense in proportion
to the benefits which, in their opinion, the estates respectively,
will receive from the work proposed, it is now unquestioned and
unquestionable that an opportunity for a hearing is absolutely
necessary to the validity of the condemnation proceedings.

The case of *English vs. The Mayor and Council of Wilmington,* 2 *Mar-
vel* 63, followed, and *Diamond State Iron Company vs. Husbands,*
*ante* p. 205, approved.

INJUNCTION BILL.—This was a bill filed by the complainants, as land owners, to restrain proceedings for laying out a road, straightening the same and vacating a part of the old road in Lewes and Rehoboth Hundred, Sussex County, under an Act of Assembly passed April 13, 1897, 20 *Del. Laws* 521, *ch.* 496. The act was entitled "An Act appointing Commissioners to straighten and widen the Public Road leading from Lewes, beginning at or near the House of John S. Tindall, extending to the Low Water-mark of the Ocean." The first and second sections of the act are as follows:

"Section 1. That Robert Arnell, Alfred L. Burton and Robert W. Dodd be and they are hereby appointed commissioners to go upon and view the premises and determine whether there is need of straightening and to widen the road leading from Lewes, in Sussex county, beginning at or near the house of John S. Tindall and extending to the low water-mark of the ocean, to the width of fifty feet where it may be practicable, and if they or a majority of them shall determine that there is need of such straightening and widening, they shall, with the assistance of some skillful surveyor, straighten and widen said part of the road, vacating so much of the old as is supplied by the new as they deem proper and shall cause a plot thereof to be made representing the courses and distances thereof, and they shall assess the damages of every owner of said lands by reason of the widening of said road, taking into consideration all circumstances of benefit that will accrue to each owner, and they shall make a computation of the costs of the changes in said road, setting down the several items of cost, and shall in their return set forth their determination that there is need of straightening and widening the same for public convenience and shall annex to their return the aforementioned plot and return the same to the office of the clerk of the peace in and for Sussex county.

"Section 2. *Be it further enacted,* That the Levy Court of Sussex County may adopt the alterations and changes made by the commissioners aforesaid as a part of the road leading from Lewes to low water-mark of the ocean, and the road so when opened shall be deemed and taken to be a public road, and that part of the old road superseded by the alterations and changes hereby authorized to be made, shall thereupon be vacated and may be inclosed by the persons through whose lands said vacated portion of the old road passes, and in any proceedings against them for so doing they may give this act in evidence under the general issue as their sufficient justification'."

The third section of the act provided for the qualification and compensation of the commissioners and surveyor, and the payment of the same by the Levy Court.

The bill set forth the provisions of the Act of Assembly and alleged that, under the authority thereof, the commissioners entered upon the lands and premises therein mentioned and laid out a road, straightening the same and vacating part of the old road, and made return to the Clerk of the Peace of the county with a plot thereof made by a surveyor, specifying the alterations and changes and the amount of damages allowed to the parties through and along whose lands the road passed, which return and plot was filed with the Clerk of the Peace, October 13, 1897, and a copy of which was filed as an exhibit.

After the filing of the return the respondent, as overseer of roads in Lewes and Rehoboth hundred, in pursuance of an order of the Levy Court, or acting as such overseer by reason of the duty imposed upon him by the law, had notified the complainants and other persons, through and along whose lands the said road so laid out passed, to remove the fences and other obstructions existing in and upon their premises, and had commenced, or was about to commence the opening of said raod.

The complainants alleged that the opening of the road as laid out through and along their lands, would cause great damage and expense to them by reason of the removal of fences and the loss of land taken by the new road and expenses made necessary by the removal of old fences and the erection of new ones; and the damages awarded to the complainants by the commissioners were utterly insufficient and inadequate to pay the loss and damage which they would suffer by the new road.

It was further alleged that the respondent, as overseer, was about to take possession of the complainants' land and remove their fences and enclosures, thereby depriving them of their property without just compensation, or the payment or tender of any compensation, and that the amount assessed as damages, although inadequate, had not been paid or ten-

dered. It was alleged that no notice of the time or place of the meeting of said commissioners was ever given to the complainants, and that the act made no provision for notice or an opportunity of being heard in behalf of the persons through and along whose land the road passed. The bill claimed that under the provisions of the act their property was being taken for public use without their consent, without notice, or an opportunity of being heard, and without due process of law, and that by reason thereof the act was unconstitutional and all proceedings thereunder, so far as the taking of property without just compensation or notice, were void.

The bill prayed for an injunction to restrain the respondent, his agents, workmen, or employees from the removal of any fences, gates, posts and the making and opening of the said road so laid out along and across the lands of the complainants; and also for a preliminary injunction in like manner. There was also a prayer that the Act of Assembly might be declared unconstitutional, void and of no effect, and for further or other relief.

The bill was filed April 18, 1898, and on the same day a rule to show cause why a preliminary injunction should not issue was awarded, returnable April 27, 1898, on which day, by agreement of counsel, a preliminary injunction was issued, as prayed for in the bill.

On March 6, 1899, the respondent's answer was filed. The facts set forth in the bill were substantially admitted, but the equity of the bill was denied.

The respondent alleged that it was the duty of the Levy Court to allow the damages and direct the payment thereof, and that it was no duty of the respondent, as overseer of roads, to notify the complainants that damages had been allowed, or to tender payment thereof, nor was it the duty of the Levy Court to so notify the complainants or tender payment.

It was claimed by the answer that the Act of the Legislature providing for the taking of private property for public use, and the assessment of damages by the commissioners, did not, under the Constitution of the State of Delaware re-

quire notice, or secure to the owner a hearing in relation to the assessment of damages, and that by reason of the omission of such provisions, it was not unconstitutional.

It was also alleged that many public roads had been laid out in this State, under Acts of Assembly for that purpose, and that in none of them was notice required to be given to the owners, through or over whose lands such road was to be located, of the time and place of assessing damages, and that such roads have not been vacated or the use and operation of the same prevented upon the ground of the unconstitutionality of the Acts of Assembly under which they were laid out.

The complainants filed as exhibits the Act of Assembly and the record of the return of the commissioners to the Clerk of the Peace and of all proceedings before the Levy Court under said Act.

The case came to a hearing on bill, answer and exhibits.

*Charles M. Cullen* and *Charles W. Cullen*, for the complainants, contended that the act under which the respondent was proceeding was clearly unconstitutional within the decision of the Supreme Court of this State in *English vs. The Mayor and Council of Wilmington*, 2 Marvel 63. The opinion in that case reviewed the decisions of the Supreme Court of the United States upon the construction of that part of the Fourteenth Amendment of the Constitution of the United States which secured all citizens against state legislation depriving them of life, liberty or property without due process of law. A conclusion was reached and stated with emphasis that an assessment of damages made acording to the plan adopted by the Legislature, in the Act under consideration, cannot now be sustained.

The legislative practice of passing road laws with provisions similar to those of the one here challenged, may have been constitutional prior to the adoption of the Fourteenth Amendment of the Federal Constitution; since that time, however, there can be no question, in view of the decision of the Supreme Court above cited, that such acts are unconstitutional.

The decision of the Supreme Court in *English vs. Wilmington, supra*, applies so exactly to this case, that it seems unnecessary to cite authorities other than those referred to in the opinion of the Chancellor in that case.

*Charles F. Richards* and *Joseph L. Cahall*, for respondents.

The only restriction upon the taking of private property for public use, under the power of eminent domain, is found in *section* 8, *article I*, of the *Constitution* of this State, which reads, "Nor shall any man's property be taken or applied to public use without the consent of his prepresentatives, and without compensation being made."

It has been held that *sections* 7 *and* 9 *of article* I are not applicable. *Wilson vs. Balto. & Phila. R. R. Co.*, 5 *Del. Ch.* 525.

By the terms of the constitutional provision quoted, the sole ᵤnd only restraint are, first, the "consent of his representatives," and second, "compensation being made."

"Consent of his representatives" is had in the expression of legislative intent in the Act of Assembly in question.

"Compensation being made" is complied with in the act of the Levy Court allowing damages assessed by the commissioners in said Act appointed and drawing drafts and orders on the County Treasurer therefor in the name of each individual whose property was affected by the widening of said road and to whom damages were assessed .

Notice of the time and place of the meeting of the commissioners to go upon the lands and assess damages is not required by the constitutional clause, nor does the act either expressly or by implication require notice. Both are silent upon the question. The commissioners followed the act implicitly and no deviation from it is alleged in the bill.

The Legislature has authority to define a mode of proceeding and it may require notice and provide for hearing evidence, but its failure to do so does not render the act unconstitutional.

Where there is a judicial proceeding, notice is a jurisdictional fact and is necessary; when, however, the acts directed

or duties imposed are merely ministerial, as the calculation of damages or the computation of loss and benefit, notice is not necessary. *Randolph, Em. Dom. secs.* 334, 335, 172, 53; *Holt vs. Somerville,* 127 *Mass.* 408, 413; *Stewart vs. Board of Police of Hinds Co.,* 25 *Miss.* 479; *Georges Creek Coal & Iron Co. vs. New Central Coal Co.,* 40 *Md.* 425; *Harper vs. L. & O. R. R. Co.,* 2 *Dana* 227; *Beekman vs. Saratoga & S. R. R. Co.,* 3 *Paige* 45; *Johnson vs. Joliet & Chicago R. R. Co.,* 23 *Ill.* 203; *Swan vs. Williams, et al.,* 2 *Mich.* 427; *Wilson vs. Balto. & Phila. R. R. Co.,* 5 *Del. Ch.* 525.

The only requisite under the constitutional provision is the payment or tender of compensation, and it is a general rule that prepayment is necessary but where the power is invoked by a state or municipality for its own use or benefit, the prepayment of the compensation, as ascertained, is not a condition precedent. 10 *Am. & Eng. Ency. L.* (2d *Ed.*) 1138; *Randolph, Em. Dom. sec.* 291; *Conn. R. R. Co. vs. County Commissioners,* 127 *Mass.* 50; *Holt, et al., vs. City Council of Sommersville,* 127 *Mass.* 408; *Cooley's Const. Lim.* 816.

The right of eminent domain is but one of several manifestations of such power over private property, and one guide, if not the best, as to what the Legislature may do is what the Legislature has done. The Delaware Legislature has passed one hundred and seventy-four acts authorizing the laying out, opening, straightening and widening of public roads. In but one of these acts was notice required, and an appeal allowed. Eleven of these acts were similar to the one now under consideration, being acts to change public roads, and in none of them was there any provision for notice, and in but one was there any provision for an appeal.

THE CHANCELLOR, immediately upon the conclusion of the argument, stated that he considered that the case was so entirely free from doubt that it would be unnecessary to hold it under advisement. He considered that the question of constitutional law involved was determined for this Court by the decision of the Supreme Court in *English vs. The Mayor and Council of Wilmington,* 2 *Marvel* 63.

Opinion:—effect of Fourteenth Amendment.

In the opinion of the Court in that case, which was delivered by the Chancellor, it was held that whenever, in the exercise of the right of eminent domain, there is provision for "an assessment made by assessors or commissioners, appointed for the purpose under legislative authority, and who are to view the estates, and levy the expense in proportion to the benefits which, in their opinion, the estates, respectively, will receive from the work proposed, it is now unquestioned and unquestionable that an opportunity for a hearing is absolutely necessary to the validity of the assessment."

The reasoning of that case, in which the decisions of the United States Supreme Court were examined, made it clear that the complainants in this case were protected, by the Fourteenth Amendment of the Constitution of the United States, from the taking of their property for public use, without notice and an opportunity for a hearing upon the question of the damage to be suffered by them, for which they were entitled to compensation,—in other words, since the adoption of the Fourteenth Amendment, the property owner, in such a case as this, was entitled to have his "day in court."

Applying this doctrine to the present case, he was of opinion that the Act of Assembly, under which the Levy Court and the respondent had proceeded, was unconstitutional and void, and that the respondent must be restrained by injunction from proceeding under it.

The legislative practice so earnestly urged by counsel for the respondent, originated under our State Constitution which has no provision construed to require notice and a hearing, and doubtless most of the acts referred to were passed prior to the adoption of the Fourteenth Amendment.

As to the effect of constitutional provisions in force before that amendment THE CHANCELLOR referred to his opinion in *Diamond State Iron Co. vs. Husbands, ante p.* 205 remarking that the Fifth Amendment of the Constitution of the United States had the effect of prohibiting only the Congress from passing any law which would deprive any person of life, liberty or property, without due process of

law, but the Fourteenth Amendment, the ratification of which was announced July 25, 1868, prohibited the several States from so doing. It was this provision which was discussed in the case of *English vs. Wilmington, supra*.

It was also observed that if any of the acts of Assembly cited by counsel, were passed since the date of the Fourteenth Amendment of the Federal Constitution, they must, if brought to the test of judicial decision, be held unconstitutional equally with that now under consideration, in accordance with the decisions of the Supreme Court of the United States respecting the meaning of the phrase "due process of law."

Accordingly, on March 10, 1900, a decree was entered making the injunction theretofore issued, perpetual; the respondent to pay the costs.