## STERRITT v. YOUNG ET AL.

EMINENT DOMAIN—RIGHT OF WAY FOR PRIVATE IRRIGATING DITCHES—
DUE PROCESS OF LAW—STATUTES—CONSTITUTIONAL LAW.

1. The owner of property taken from him by virtue of the right of eminent domain is entitled to notice and an opportunity to be heard upon the question of the amount of his compensation.

2. A statute authorizing the taking of private property under the right of eminent domain must, to be valid, provide for notice to the owner of the time and place of the meeting of the board or appraisers appointed to determine the amount of compensation to be paid to such owner, that he may have an opportunity to be heard.

3. The statute which provides a method for obtaining a right of way for a private irrigating ditch over the lands of another by condemnation proceedings, in failing to provide for notice to the property owner of the time and place of the meeting of the appraisers appointed to determine the compensation to be paid the owner, violates the provisions of section 6 of article I of the State constitution declaring that no person shall be deprived of life, liberty or property without due process of law, and, for that reason, the statute is unconstitutional and void. (Rev. Stat., 1899, Secs. 899, 900.)

4. Answering the argument that to hold the statute void will unsettle the title to the right of way of many ditches acquired thereunder, it is said that if the compensation has been accepted by the landowner it matters not how it was arrived at, and he cannot be heard to complain after having accepted the money.

5. A proceeding to condemn property under the right of eminent domain is not a civil action, nor is it necessary that it should be considered in the ordinary course of legal proceedings. The appointment of appraisers may be confided to any fair tribunal, board or officer and still be due process of law, provided, the landowner shall have notice and an opportunity to be heard; and it would be his right to show, if he could, that the case as made would not authorize the proceeding.

[Decided November 20, 1905.]                    (82 Pac., 946.)

On reserved constitutional questions from the District Court, Carbon County

The questions were reserved in an action brought by Frank E. Sterritt against Charles G. Young and another to restrain the construction of an irrigating ditch across the lands of plaintiff. The defendants claimed to have acquired · a right of way for the ditch by condemnation proceedings as authorized by statute. The questions reserved involved the constitutionality of the statute providing for condemning a right of way for private ditches.

*McMicken & Blydenburgh,* for plaintiff.

While the right of eminent domain is one inherent in government, nevertheless the property cannot be taken without due process of law. (Stewart v. Palmer, 74 N. Y., 183; Board v. Aldredge, 73 Pac., 1104; Aldredge v. School District (Okla.), 65 Pac., 96; Branson v. Gee, 36 Pac., 527; Davidson v. Board, 96 U. S., 97.) As to what is due process of law, see Stewart v. Palmer, *supra;* Westervelt v. Gregg, 12 N. Y., 209; Cooley's Const. Lim., 355; Ireland v. Rochester, 51 Barb., 414; *In re* Ford, 6 Lans., 92; Davidson v. Board, 96 U. S., 97.

The courts have held in all proceedings to take eminent domain that there must be notice and opportunity to be heard. (Burns v. Multnomah Bar Co., 15 Fed., 177; Ames v. Booming Co., 11 Mich., 139; Long v. People, 14 Mich., 454; Kundinger v. City of Saginaw, 59 Mich., 325; Langley v. Ramsey County, 16 Minn., 375; McGavett v. Omaha, 40 Neb., 64.) We are aware that there have been frequent decisions to the effect that eminent domain proceedings are exempt from the provisions of the constitution requiring trial by jury, and that the assessment of damages by the commissioners has been held to be legal; but in all these cases that we have been able to examine it has been held that the procedure must be such as was applicable, and it has been the usual custom and mode of procedure in eminent domain matters. And in accord with this we may say that

we have been unable to find any case where there was legis-
lative provision for the assignment of the compensation by
the commissioners that the proceedings did not either orig-
inate in some court to whom the commissioners were re-
quired to report and where the land owner might have a
chance of hearing, both prior to the appointment of the
commissioners, and afterwards on review of the award, or
that it was required that the report or award should be
confirmed and where an opportunity was given to file ex-
ceptions and objections and to have the matter reviewed and
also an opportunity for appeal.  In our own state all such
opportunities are given in every other proceeding in eminent
domain except in this special one in regard to ditches by
private individuals.  Where a statute does not provide for a
notice, the mere fact that the notice may be given does not
remedy the defect in the statute.  These proceedings in emi-
nent domain are special proceedings, and they give no power
to any officer, board, court or commissioner to act in any way
except as provided by the statute, and they must be strictly
construed.  (Powers v. Bears, 12 Wis., 213;  Board v. Al-
dredge, 73 Pac., 1104;  Aldredge v. Sch. Dist., 65 Pac., 796.)

All the requisites of the petition must be complied with or
the court or board will acquire no jurisdiction.   (Reed v.
R. R. Co., 126 Ill., 48.)   Under the statute in question, how-
ever, there is no opportunity to be heard upon the sufficiency
of the petition, the necessity for the ditch going through the
lands, or even the truthfulness of the petition in any partic-
ular;  and this petition by the statute is not required to be
verified;· all that is necessary, therefore, is for anyone who
desires to injure his neighbor, or to cut up his lands with a
ditch, is to file an unverified petition with the Board of
County Commissioners, when, without any redress on behalf
of the land owners, the commissioners must appoint apprais-
ers, and these appraisers may be all friends of the person fil-
ing the petition, and there are no qualifications prescribed as
to whether they shall be freeholders or whether they shall
have any qualifications whatever to perform the duties they

are called upon to perform. Now, if the statute is strictly followed, and these men are appointed appraisers, then if by any possible twisting of the statute it could be said that they were judges of the necessity, etc., of the ditch going through the land of the land owner, or as to whether the prerequisites had been fulfilled, it would be giving judicial power to the appraisers. But they are not commissioners in the sense in which that word is sometimes used in eminent domain statutes, and they have no power whatever except to appraise. It is not necessary to refer to the constitution vesting in certain courts the judicial power of the state, or to cite decisions to the effect that acts of the Legislature which impose judicial duties upon other than the courts named or provided for in the constitution are void.

In some states where the constitution provides for the appointment of commissioners to assess the damages on condemnation proceedings, it has been held that they are both the judges of the law and the facts. (R. R. Co. v. Voorhees, 50 Mich., 506; Toledo, &c., Co. v. Dunlap, 47 Mich., 476.)

Section 900 provides that the appraisers shall make deductions or allowance for real benefits or advantages that the owner may derive from the construction of the ditch. Under similar constitutional provisions to ours this has been held to be illegal. (R. R. v. Dickerson, 66 Am. Dec., 108; Brown v. Beatty, 34 Miss., 227; Isomman v. R. R. Co., 36 Miss., 313; Penrice v. Wallis, 37 Miss., 183; R. R. Co. v. Noye, 39 Miss., 385; Micken v. Patty, 57 Miss., 397.)

In the statutes of most of the states, as well as our own in other cases, provision is made for a review of the proceedings, either of the jury, or where commissioners are prayed for, of the commissioners, and also by exceptions to the award. The court or judge may take up and set aside the award when inadequate or inequitable  Under the statute in this proceeding, as has been stated before, there is no such provision. These appraisers, who may be unpaid, and to whose appointment the land owner has no power to ob-

ject, merely record in gross the amount that they find should be paid, if any, this record to be made in the County Clerk's office. There is no provision by which this estimate can be reviewed; there is no provision by which, no matter how unjust the compensation may be, no matter how fraudulently done, no matter what it may consist of, the land owner can have it set aside and have a proper value placed upon his property. These appraisers are not required to give him any notice; they may go into secret session; and their proceedings are without any record. The only thing they have to do is to fix the amount or say what the land owner is entitled to and have that recorded in the County Clerk's office; and if their award should be that the land owner is entitled to nothing, if this statute is now followed the party seeking to obtain land would have the right without paying anything to go upon and take to his own use the land of another

It cannot be contended, because the statute does not provide for notice that the intention is that they should make a return to the Board of County Commissioners and the Board of County Commissioners should review their award, since there is no provision for so doing. Should the Commissioners attempt in any way to review, confirm, or set aside their return or appraisement, such proceedings would be absolutely void as being without authority of statute or law. By the great weight of authority the ultimate power of restricting the exercise of eminent domain to the actual reasonable necessities of the case is to be vested in the court rather than the donee. (Fairchild v. City of St. Paul, 46 Minn., 54; People v. Blake, 19 Cal., 579; Spring Valley Co. v. S. M. W. W. Co., 64 Cal., 123; Reed v. Bridge Co., 8 Bush., 69; Tracy v. R. R. Co., 80 Ky., 269; Ry. Co. v. State, 34 Minn., 227; R. R. Co. v. Ry. Co., 31 N. J. Eq., 475; Olmstead v. Morris Aqueduct, 58 N. J. L., 303; *In re* Cent. Ry. Co., 66 N. Y., 407; Ry. Co. v. Davis, 43 N. Y., 137; Ry. Co. v. Blake, 9 Rich., 228; Stearns v. City of Barre, 73 Vt., 281; Ry. Co. v. Ry. Co., 17 W. Va., 812; Ry. Co. v.

Cornell University, 52 Wis., 537; Water Power Co. v. Green Bay Canal Co., 142 U. S., 254.) And the question of the necessity for taking is a judicial one, which must be determined either by a court or by some quasi judicial tribunal designated in the statute. (Lewis on Eminent Domain, Secs. 238, 393; O'Hara v. Ry. Co., 139 Ill., 151; Cooley Const. Lim. (6th Ed.), 664; Heyneman v. Blake, 19 Cal., 579; Ry. Co. v. Love, 81 N. C., 434; McWhirter v. Cockrell, 2 Hed., 9.)

We are aware that it has been held in some of the western territories that the taking of land for ditches for irrigation is a public use, but we believe that this is a strained construction of the law; and it would seem from the decisions rendered in regard to private rights of way and for similar matters and the general particulars involved, that the taking of another's land simply for the purpose of irrigating the land of one individual is strictly a private use and does not come under the general power of eminent domain and would not be allowable in this state except for the provision of the Constitution, Section 32, Article I. The very language of this section of the Constitution says that such use is a private use, because it is mentioned as an exception to the prohibition against taking private property for private use. And it is clearly a private and not a public use. (Taylor v. Porter, 4 Hill, 140; Clark v. White, 2 Swan, 540; Rice v. Alley, 1 Snead, 51; Nesbit v. Trumbo, 39 Ill., 110; Crear v. Crossly, 40 Ill., 145; Bankhead v. Brown, 29 Ia., 540; Osborn v. Hart, 24 Miss., 89; Wild v. Degg, 43 Ind., 355; Whitham v. Osborn, 3 Ore., 318; Saddler v. Langham, 34 Ala., 311; Bradley v. Fall Brook Irr. Dist., 68 Fed., 948; Costa v. Tie Water Co., 18 N. J. Eq., 54; Petition of Road Co., 34 N. H., 134; Jordan v. Woodward, 140 Me., 317; Bonnepart v. R. R. Co., Bald., 223; O'Rielly v. Drain. Co., 32 Ind., 169; Gilmer v. Lime Point, 14 Cal., 251.)

Clearly, then, the framers of the Constitution considered both private ways of necessity and ditches to irrigate private lands private uses; and as there was no law of commerce

governing the territory, nor any provision in the Constitution of the United States for taking priviate water for private uses in 1875, when this statute was first enacted, it never was a valid law of the territory. And being void at the time the state was admitted, the fact that it is printed with the published statutes, and the fact that the Constitution permitted taking property for private uses after it went into effect, would not render valid the law which was wholly invalid before that time.

*N. R. Greenfield,* for defendants.

The Constitution does not provide the method of the exercise of the right of eminent domain, but leaves the regulation of that matter to the legislature, and therefore no question of due process of law is involved. There need not be a judicial proceeding. It is a special proceeding. (State v. Rapp, 30 Minn., 65; People v. Smith, 21 N. Y., 595.) This court will presume that all the requisites of the statute were complied with, including the necessary allegations of the petition, in the proceeding here questioned. The county board can adopt rules and regulations for hearing such matters. (Rev. Stat., 1899, Sec. 1059; Ency. Pl. & Pr., 532.) And it must be presumed that the board will adopt such just rules as will give all parties a fair hearing. All that is required of the legislature in providing a procedure for such cases is that the tribunal provided for shall be an impartial one. It is no objection that neither party has a direct voice in selecting the appraisers. (7 Ency. Pl. & Pr., 545; Fallbrook Irr. Dist. v. Bradley, 164 U. S., 392.) The decided weight of authority favors the validity of statutes allowing deductions for benefits. (15 Cyc., 764-766, 717.)

The practice of the district courts of this state has been to allow an appeal in all matters originally instituted before the Board of County Commissioners, whether the statute expressly provides for an appeal or not, so long as any question of a judicial or quasi-judicial nature is involved. And the authorities are to the effect that where a statute is silent as to

how or when an appeal may be taken and perfected the person feeling aggrieved must follow the form of procedure adopted in similar cases. (7 Ency. Pl. & Pr., 639; 15 Cyc., 944, 945; R. R. Co. v. Adams, 29 Fla., 260; R. R. Co. v. Sullivant, 5 O. St., 276; R. R. Co. v. Davis, 43 N. Y., 137.)

While it is the province and duty of the courts to determine the meaning and true construction of constitutions and statutes, yet, when the legislative department, in the enactment of laws, and the executive officers, charged with the duty of enforcing or applying constitutional provisions and statutes, have, by contemporaneous, long, uniform and practical construction of a constitutional or statutory provision, accepted and acted upon it as having a definite and particular meaning, the conclusion so reached and acted upon by the legislative department and by executive officers will, in view of the great injury and injustice which would result from a change in such construction and meaning, be accorded great weight by the judiciary when that department of the government is called upon to construe the law, and will in general control whenever the question is in a degree doubtful or open to reasonable debate. (8 Cyc., 736, 737; Burke v. Snively, 208 Ill., 328; 10 Century Digest, p. 1231.) The Legislature of this state and territory has, during all the time since these sections were first placed upon the statute books, considered them as constitutional, as is apparent from the fact that the original act containing these sections was amended by the Legislature in 1888. (Chapter 55 of Session Laws, 1888.) Again in 1891 (p. 105, Session Laws, 1891) and in 1903 (Chapter 73, Session Laws, 1903) and in 1905 (Session Laws, 1905, Chapter 39).

Neither our constitution or statutes provide that the question of necessity is to be a judicial question to be determined by the courts, and in absence of some constitutional or statutory provision to the contrary, the necessity and expediency of exercising the right of eminent domain are questions essentially political and not judicial in their

character. The determination of those questions belongs to the sovereign power; the legislative determination is final and conclusive, and the courts have no power to review it. It rests with the Legislature not only to determine when the power of eminent domain may be exercised, but also the character, quality, method and extent of such exercise. And this power is unqualified, other than by the necessity of providing that compensation shall be made. (15 Cyc., 629, 630, 631; 7 Ency. Pl. & Pr., 473, 474.)

There is some conflict of authority as to what constitutes a public use, but the authorities are uniform in holding that irrigation is a public use, for which the Legislature may authorize a private person or corporation to exercise the power of eminent domain. (Oury v. Goodwin, 3 Ariz., 255; Rialto Irr. Dist. v. Williams, 103 Cal., 384; Turlock Irr. Dist. v. Williams, 76 Cal.; Nav. Co. v. Klein, 63 Kan., 484; Ellinghouse v. Taylor, 19 Mont., 462; Irr. Dist. v. Collins, 46 Neb., 411; Irr. Canal Co. v. Farmers' Irr., 45 Neb., 884; Irr. Co. v. Barnhart, 22 Ore., 389; Irr. Co. v. Hudson, 85 Tex., 587; Nash v. Clark, 27 Utah, 158; Irr. Co. v. Flathers, 20 Wash., 454; Irr. Dist. v. Bradley, 164 U. S., 369; Farm Investment Co. v. Carpenter, 9 Wyo., 210.)

Counsel state that Section 32, Article I, of the constitution of this state, shows that the framers of our constitution considered rights of way for ditches as private uses. This section of the constitution must be construed with all the other parts of the constitution bearing upon that section. Especially should it be construed in connection with the section of the constitution immediately preceding it and the one immediately following it; also in connection with Article VIII of our constitution.

The sections of statute in question constituted a valid enactment during the territorial period and are not in conflict with the constitution of the United States or the Organic Act of Wyoming. (Stanford v. Tucson, 71 Pac., 903 (Ariz.); Oury v. Goodwin, 3 Ariz., 255; Swan v.

Williams, 2 Mich., 427; Warren v. R. R. Co., 18 Minn., 384.)

BEARD, JUSTICE.

This action was commenced in the District Court of Carbon County by the plaintiff against the defendants for an injunction to restrain the defendants from going upon and constructing an irrigating ditch over and across plaintiff's land. In a supplemental answer filed by defendants they alleged that appraisers had been duly appointed by the County Commissioners of said county to view the premises and assess plaintiff's damages for the construction of said ditch, and that said appraisers had viewed the premises and had made due report and return of their ascertainment and assessment of plaintiff's damages; that defendants had paid all costs and expenses incurred by reason of said appraisement and had offered and tendered to plaintiff the amount awarded to him by said appraisers, which he refused to accept, and that said sum was then deposited with the Board of County Commissioners with instructions that the same be paid to plaintiff. It also appears from the pleadings that a petition had been presented to the commissioners by the defendants praying for the appointment of appraisers, and that notice was published by the commissioners of the time when the appraisers would be appointed. There is no allegation in the supplemental answer that any notice was given to plaintiff of the time or place of meeting of the appraisers or that they gave him any opportunity to be heard as to the amount of such damages, or that he appeared at such meeting. To this supplemental answer a general demurrer was filed by the plaintiff, and the court, upon the request of both parties and on its own motion, deeming difficult constitutional questions to have arisen upon the demurrer, reserved its ruling thereon and certified the following questions to this court for decision, viz:

"1. Do Sections 897, 898, 899 and 900 of the Revised Statutes of Wyoming of 1899 provide a valid way under

the constitution of the State of Wyoming by which a private person may condemn the lands of another for a right of way for a ditch to irrigate his own lands?

"2. Are Sections 897, 898, 899 and 900 of the Revised Statutes of Wyoming of 1899 and the procedure therein indicated in conflict with Section 6 of Article 1 of the constitution of the State of Wyoming?

"3. Are Sections 897, 898, 899 and 900 of the Revised Statutes of Wyoming of 1899 and the procedure therein indicated in conflict with Section 7 of Article 1 of the constitution of the State of Wyoming?

"4. Are Sections 897, 898, 899 and 900 of the Revised Statutes of the State of Wyoming of 1899 and the procedure therein indicated in conflict with Section 32 of Article 1 of the constitution of the State of Wyoming?

"5. Are Sections 897, 898, 899 and 900 of the Revised Statutes of Wyoming of 1899 and the procedure therein indicated in conflict with Section 33 of Article 1 of the constitution of the State of Wyoming?

"6. These Sections 897, 898, 899 and 900 of the Revised Statutes of Wyoming of 1899, having been originally adopted in 1875 while Wyoming was a territory and before the adoption of the state constitution, were they void at that time, and if so, did they ever become valid laws of the State of Wyoming?"

The sections of the statutes involved in the questions are those which provide the manner in which a private person may exercise the right of eminent domain for the right of way for an irrigating ditch over the lands of another. Section 897, Revised Statutes, 1899, provides in substance, that where one's lands are so situated that to irrigate the same it is necessary to construct a ditch for that purpose over the lands of another, he shall be entitled to such right of way.

Section 898 limits the extent of such right of way to a ditch, dyke or cutting sufficient for the purposes required.

Sections 899 and 900 provide the manner in which such

right of way may be condemned if the owner of the land over which the ditch is to be constructed refuses to grant the same, and are as follows: "Sec. 899. Upon the refusal of owners of tracts of land, or lands, through which said ditch is proposed to run, to allow of its passage through their property, the persons desiring to open such ditch may present to the County Commissioners of the county in which said lands are located, a petition signed by the person or persons, describing, with convenient accuracy, the lands so desired to be taken as aforesaid, setting forth the name or names of the owner or other person interested, and praying the appointment of three appraisers to ascertain the compensation to be made to such owner or persons interested. Upon the receipt of said petition, the said County Commissioners shall give notice, at least thirty days prior to the appointment of the said appraisers, by public notice in a newspaper, when published in the county, or by posting three or more notices in three different places in said county, stating that such appraisers will be appointed on the...... day of...............

"Sec. 900. The said appraisers, before entering upon the duties of their office, shall take an oath to faithfully and impartially discharge their duties as said appraisers. They shall hear the proofs and allegations of the parties, and any two of them, after reviewing the premises, shall, without fear, favor or partiality, ascertain and certify the compensation proper to be made to said owner, or persons interested, for the lands to be taken or affected, as well as all damages accruing to the owner or person interested, in consequence of the condemnation of the same, taken or injuriously affected as aforesaid, making such deduction or allowance for real benefits or advantages as such owner or parties interested may derive from the construction of any such ditch or flume. They, or a majority of them, shall subscribe a certificate of their said ascertainment and assessment, which shall be recorded in the county clerk's office of the county in which said lands are situated, and upon the payment of

the compensation (if any) the said person or persons shall have the right of way to construct said ditch or flume." The foregoing are all of the statutory provisions on the subject.

It is contended by counsel for plaintiff that the procedure thus provided and authorized attempts to take, and authorizes the taking of private property without due process of law and without just compensation to the owner, and, therefore, violates both the letter and the spirit of the constitution, and is void.

In considering the question it must be remembered that we are dealing with the question of the constitutionality of the law only, and must assume that all of its requirements are to be fully complied with, and that nothing has been or will be done that the statute does not in express terms or by necessary implication require. The proceeding is to be initiated by the filing of a petition by the applicant with the County Commissioners of the county in which the lands sought to be taken are located, praying the appointment of three appraisers to ascertain the compensation to be made to such owner or person interested. Upon the receipt of such petition the commissioners are required to give at least thirty days' notice prior to the appointment of said appraisers, stating that such appraisers will be appointed on a certain day. The appraisers are required to qualify by taking an oath. They are to hear the proofs and allegations of the parties, to view the premises and to certify the compensation to be made to the owner, which certificate is to be signed by them, or a majority of them, and shall be recorded in the office of the County Clerk of the county in which the lands are situated, and upon payment of the amount so certified the petitioner shall have the right of way to construct said ditch. It is insisted that as the statute makes no provision for notice to the property owner as to the time or place of the meeting of the appraisers, he is deprived of the right to be heard upon the question of the amount of damages, and for that reason the statute con-

travenes Sections 6 and 32 of Article 1 of the constitution. These sections of the constitution are as follows: "Section 6. No person shall be deprived of life, liberty or property without due process of law. Section 32. Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation."

That the owner of property taken from him by virtue of the right of eminent domain is entitled to notice and an opportunity to be heard upon the question of the amount of his compensation can hardly be questioned. The decisions are almost unanimous on that subject. But the important question presented in this case is, must the statute so provide? . Upon this question there is an apparent, if not real, conflict in the decisions. In many cases it has been held that notice must be given, although the statute does not in terms require it, and that a statute providing for a hearing implies that notice must be given, or the proceeding will be void. A brief review of a few of those cases will be sufficient here.

The case of Whitford Township v. Probate Judge, 53 Mich., 130, was a writ of *certiorari* to bring before the Supreme Court the proceedings of the Probate Judge appointing a special drain commissioner to construct a ditch to drain certain lands, and to assess the expense of the same against the property benefited. There was no notice given to the land owners of the application or proceedings before the judge of probate, or of the time and place when the same would be heard. It was held that "such notice is always necessary when it is sought to deprive the citizen of his property; and if the notice is not expressly provided for in the law itself, it is in all such cases necessarily implied, and the failure to give such notice renders the proceedings, if otherwise regular, null and void." Chief Justice Cooley in his concurring opinion said: "I do not think

it legally competent to confer upon the probate or any other
court the power, without notice to the parties concerned, to
appoint an officer to decide finally upon the question of
laying taxes, and to proceed to lay taxes in his discretion,
as has been done here; and if the legislation, under which
this so-called commissioner has proceeded, will permit of
such action, it is void." Campbell, J., concurred with the
Chief Justice, and the proceedings were held void.

The case of *In re* Rood in South Abington Township,
109 Pa. St., 118, was *certiorari* to the Quarter Sessions in
the establishment of a public road. Viewers were appointed
and made their report, and it was objected that, "legal no-
tice of the meeting of the viewers to make the view was not
given." In the opinion it is said: "In the act of 1836 there
is no provision made for notice; it may have been supposed
that the presentation of a petition to the court, the appoint-
ment of viewers, their actual appearance upon the ground,
the view and survey of the route, and the filing of their
report, were circumstances of such notoriety as would put
all parties on their guard (Baldwin and Snowden Road, 3
Grant, 62), and that the intervention of a whole term of
court gave full opportunity for knowledge, and for prepara-
tion to resist the confirmation. But, as the appropriation of
a man's property and the assessment of his damages, with-
out notice, is repugnant to every principle of justice, it was
held in a number of cases, under the act of 1836, notably in
Neelh's Road, 1 Barr., 355; Boyer's Appeal, 1 Wr., 257;
and Central Railroad Co.'s Appeal, 6 Out., 38, that notice
to the property owner is absolutely essential to the validity
of the view or assessment." In many other cases it has
been held that, although the statute does not expressly pro-
vide for notice, the proceedings are void unless notice is
given, and that statutes which provide for a hearing imply
that notice must be given and if not given the proceedings
are void. (Tracy v. Elizabethtown, L. & B. S. R. R. Co.,
80 Ky., 259; Peoria & R. I. Ry. Co. v. Warner, 61 Ill., 52;
Gamble v. McCrady, 75 N. C., 509; The B. & O. R. R. Co.

v. The P. W. & Ky. R. R. Co., 17 W. Va., 812; People ex rel. Heister v. Gilon, 121 N. Y., 551; Strachan v. Drain Com'r., 39 Mich., 168; Dickey v. Tennison, 27 Mo., 373.) Other cases on the question of the necessity for notice might be cited. But an examination of these cases discloses that in but few of them is the constitutionality of the statutes called in question. What is really decided is, that in order to a valid exercise of the right of eminent domain, the land owner must have notice whether the statute in express terms requires it or not; and that unless notice is given the *proceedings* are void. It has also been held that, although the statute did not in terms provide for notice, but did provide for a hearing by the appraisers, or commissioners as they are sometimes called, and notice was actually given, the party could not complain. (Kramer v. Cleveland and Pitts. R. R. Co., 5 O. St., 140-147; Paulsen v. Portland, 149 U. S., 30-41.)

This brings us to the consideration of the question, must the statute, to be valid, provide for notice to the land owner and must he be given an opportunity to be heard as to the amount of his damages? The statute under consideration provides for notice by the County Commissioners that on a certain day appraisers will be appointed, and it is argued that, having been once notified, the land owner must take notice of all subsequent proceedings. But when the commissioners have given the required notice and have appointed the appraisers their duty and authority in the matter are at an end. They are not authorized to fix the time or place of the meeting of the appraisers, nor is any report to be made to them and they are without power to confirm, modify or set aside the report of the appraisers. The appraisers, or a majority of them, are to make and sign a certificate of their ascertainment and assessment which is to be recorded in the office of the County Clerk, and this certificate, when so made and recorded, and upon payment of the amount so ascertained, gives to the applicant the right of way for the ditch. It is the act of the appraisers

that deprives the party of his property, and not the act of the commissioners in appointing them that does so. There is nothing that the commissioners are authorized to do that can in any manner be construed into notice of when or where the appraisers will meet, nor does the statute do so. It is true that the statute says they shall hear the proofs and allegations of the parties and shall review the premises; but how are the parties to know when or where the appraisers will meet for that purpose without notice? In all other proceedings to condemn private property by virtue of the right of eminent domain the statute has provided for notice. The statute providing for the establishment of private roads requires that the County Commissioners shall at the time of the hearing of the application cause an order to be issued directing the viewers to meet, on a day named in such order, on the proposed road, and if for any reason they are unable to meet at that time they may fix some other date, but shall be required to give notice in writing of the time and place where they will meet; and an appeal is provided for to the District Court. (Chap. 11, S. L. 1901.) Similar provisions are made for notice where property is to be taken for a public road. (Sec. 1918 et seq., R. S. 1899.) Likewise notice is required for the condemnation of a right of way for railroads and for other purposes. (Sec. 2916 et seq., R. S. 1899, and Sec. 3084 as amended and re-enacted by Ch. 31, S. L. 1901.)

In all such cases, except the one under consideration, the viewers or appraisers are required to make their report to the County Commissioners or to the court or judge, and provision is made for review or appeal.

A leading case upon the subject and where the constitutionality of the law was directly raised and determined is found in Stewart v. Palmer, 74 N. Y., 183. The act there under consideration authorized an assessment to be made against property benefited by the opening of a street, without notice to the owner of the property found to be benefited by the commissioners appointed for that purpose. Earl, J.,

in delivering the opinion of the court, said: "We shall examine and consider but one question, which we deem decisive of this case, and that is whether the act authorizing the assessment was constitutional.  *  *  *  I am of opinion that the constitution sanctions no law imposing such an assessment, without notice to, and a hearing or an opportunity of a hearing by the owners of the property to be assessed. It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard. It matters not, upon the question of the constitutionality of such a law, that the assessment has, in fact, been fairly apportioned. The constitutional validity of the law is to be tested, not by what has been done under it, but by what may by its authority be done."

In Gatch v. The City of Des Moines, 63 Ia., 718, the Supreme Court of Iowa quotes and approves the foregoing quotation and held a law unconstitutional that did not provide for notice, and cites many cases in support of the proposition. To the same effect see Rutherford's case, 72 Pa. St., 82. And in In re Mayor, 70 N. Y. S., 227, this language is used: "It is manifest, from the reading of the above cited statute, that, unless included by permissible construction of Section 2, there is a total absence of provision for a notice to the parties against whose property an assessment might be imposed. Without such a provision an act which authorizes an assessment must be deemed unconstitutional, since it has the effect of depriving the owner of the property to be assessed of his property without due process of law." In the case of Board of Education, &c., v. Aldredge (Okl.), 73 Pac., 1104, after stating the holding of the courts on the question, the court concludes as follows: "After a careful examination of all of the authorities at our command, we are clearly of the opinion that the statute must stand or fall as enacted by the Legislature, and that, where no notice is provided, a court ought not to say that notice is implied;

and, as has been said by other law writers, the question is, not what was done, but what did the statute authorize to be done." It was held in Siefert v. Brooks, 34 Wis., 443, that a statute which failed to require notice to be given of the time and place of the assembling of the jury, the act must in that particular be held unconstitutional and void, and the proceedings taken under it also inoperative and wholly void, and it is said: "It is, true that Section 46 enacts that the jury shall hear the declarations of the parties interested for or against the laying out of the street, and shall take such evidence as a majority of the jury think proper; but this, with no regulation for the giving of some reasonable notice enabling the land owner to appear, must in general, if not always, be found.a fruitless and nugatory provision.  *  *  * It is the omission or unconstitutional feature of the statute which vitiates, and that can be cured only by the Legislature itself, or in particular cases, it may be, by the waiver or voluntary abandonment of his constitutional rights by the land owner, who has that power." In Lumsden v. Milwaukee, 8 Wis., 485, the act was held unconstitutional because it did not provide that the jury should be sworn before acting, and the fact that they were actually sworn did not render their acts valid.  (See also McGavock v. City of Omaha, 40 Neb., 64; Kundinger v. City of Saginaw, 59 Mich., 355; Langford v. The Commissioners of Ramsey Co., 16 Minn., 375.)

We are of the opinion that the better reasoning is that the statute must provide for notice, and that where none is provided, it should not be implied by the court. Especially in view of the clear and explicit provisions for notice contained in our statutes in all other cases where the right of eminent domain is authorized to be exercised, and in view of the further fact that not only in this case, but in those arising under similar statutes in other states, the appraisers have acted upon the assumption that they were not required to give any notice. Again, if notice is implied, what kind of notice shall be given? Certainly it must be legal notice,

and in the absence of a statute authorizing notice by publication or posting, in a proper case, none but personal notice would be legal, and it might often occur that by reason of non-residence of a party or where his residence was unknown, no notice could be given.  We think these views are also supported by the weight of authority, and we are constrained to hold that the statute in question violates the provisions of Section 6 and Section 32 of Article 1 of the constitution and is, therefore, void.  It is contended by counsel for defendant that to so hold will unsettle the title to the right of way of many ditches in the state which have been acquired under the statute.  But that argument is not sound, because if the compensation has been accepted by the land owner it matters not how it was arrived at, and he cannot be heard to complain after having accepted the money.

Several other points have been presented by counsel for plaintiff which may be referred to briefly.  It is contended that as the statute does not provide for any hearing before the County Commissioners the plaintiff would have no right to contest the sufficiency of the petition, and that the commissioners must appoint appraisers in any event; and if this be not true, then the statute invests the commissioners with judicial powers which can only be exercised by the court.  The conclusions at which we have arrived renders it unnecessary to decide these questions, but it may not be out of place to say here, that the provisions of the statute are very meager and involve much uncertainty.  This will no doubt be corrected, should the Legislature pass another act on the subject.  The proceedings to condemn property under the right of eminent domain is not a civil action, nor is it necessary that it should be considered in the ordinary course of legal proceedings.  The appointment of appraisers may be confided to any fair tribunal, board or officer and still be due process of law, provided, the land owner shall have notice and an opportunity to be heard; and he would have the right to show, if he could, that no such case was

made ·as would authorize the commissioners to act. (Lewis Eminent Domain (2d Ed.), pp. 881, 882.)

The first question submitted by the District Court is, therefore, answered in the negative, and as it includes the second, third, fourth and fifth questions, it is a sufficient answer to each of them and also eliminates from consideration the sixth question submitted.

POTTER, C. J., and VAN ORSDEL, J., concur.