THOMAS W. LEWIS and ZORA C. LEWIS *v.* FRANCIS V. DU PONT, ET AL., constituting the State Highway Department of the State of Delaware.

(*November* 20, 1941.)

LAYTON, C. J., RODNEY and TERRY, J. J., sitting.

*Ivan Culbertson* for petitioners.

*James R. Morford,* Attorney-General, and *P. Warren Green* for respondent.

Superior Court for New Castle County, September Term, 1941.

LAYTON, Chief Justice:

This cause is before the Court on a motion by the petitioners in a mandamus proceeding to strike the respondent's answer as being insufficient to state a defense.

The petitioners are owners of land which was necessary to be taken by the State for the construction of a high level bridge over the Delaware and Chesapeake Ship Canal. The owners and the State Highway Department could not reach an agreement, and the Department instituted condemnation proceedings under Section 5730 of the Revised Code.

Briefly, and omitting details not pertinent here, the statute requires the Department, upon five days notice in writing to the owner of the property sought to be condemned, to apply to the Associate Judge of the State resident in the County where the property lies for the appointment of a commission of five freeholders to view the property and assess the damages resulting from the taking of

the property. The freeholders, in turn, are required to give to the owner and the Department ten days' notice in writing of the time of their meeting to view the premises, or in specific cases, to make publication of the notice. They are also required to keep a record of their findings and award and to return them to the Prothonotary of the County, and to certify them to the owner and to the Department. If the Department or any party in interest is dissatisfied with the findings and award, it or he may, within fifteen days, sue out a writ of ad quod damnum "requiring the Sheriff of said County, in the usual form, to inquire of twelve impartial men of his bailiwick of the damages which will be sustained by the taking of the property," and their report is final. The Department may then, within two months, pay or tender the amount of the award to the owner, and upon his refusal to accept, may deposit the amount in the Farmers' Bank of the particular County to his credit.

The Department instituted condemnation proceedings. The Commission of Freeholders made an award in the sum of $6,500. The Department, being dissatisfied, sued out a writ of ad quod damnum, and the Sheriff's jury reduced the amount of the award to the sum of $3600. This amount the owners refused to accept, and it was deposited to their credit in the proper bank.

The owners of the land condemned sought by mandamus to compel the Department to pay to them the sum of $6500, the amount of the freeholders' award. They contend that that part of the statute providing for the suing out of a writ of ad quod damnum is violative of the due process clause of the Fourteenth Amendment to the Federal Constitution, and of Section 7, Article 1 of the State Constitution forbidding the deprivation of life, liberty or property unless by the law of the land, for the reason that

notice to the opposing party is neither required nor provided by the statute, and no opportunity is afforded the owners to be heard on the question of damages before final determination; and the further contention is made that these statutory provisions, while unconstitutional, are yet separable provisions, leaving in force and effect the provisions with respect to awards of damages made by freeholders; wherefore, it is asserted, the petitioners have a clear legal right to have paid to them the freeholders' award in the sum of $6500.

The answer of the Department recited the proceedings taken. It set out the issuance of the writ of ad quod damnum, and the return of the Sheriff thereon, the issuance of an alias writ and personal service thereof on the petitioners; the language of the command of the writs which was, "We Therefore, Command, that giving ten days' notice to the said Thomas W. Lewis and Zora C. Lewis, his wife, You inquire &c."; that after the Sheriff had notified counsel for the owners and for the Department of the day fixed for the calling of the jury, the petitioners' counsel, after consultation with opposing counsel, requested and obtained a postponement; that at the convention of the jury the petitioners were present and represented by counsel who made objection that the statute was unconstitutional, as well as objection to the form of the writ; and that thereafter the teste of the process was amended by the Court, on motion of the Department's counsel, counsel for the petitioners being present and consenting.

Passing by the question raised by the Department that the petitioners in a mandamus proceeding cannot set up the unconstitutionality of the statute under which the respondents have acted, for the reason that, in such circumstances, a clear legal right necessarily does not appear; and passing also what is termed an estoppel resulting from the peti-

tioners' presence at and participation in the ad quod damnum proceedings, the substantial question of merit will be considered.

In *Wilson v. Baltimore & P. R. Co.,* 5 *Del. Ch.* 524, Chancellor Saulsbury held that the failure of the company's charter authorizing the taking of property for a railroad to provide for notice to the owner of the assessment of damages for the land taken did not render the act unconstitutional. The learned Chancellor held that the recited provision of the State Constitution did not apply to the exercise of the right of eminent domain; and that the due process clause of the Fourteenth Amendment to the Federal Constitution was not applicable, apparently on the theory that the purpose of the amendment was only to secure the objects contemplated by the civil rights bill. The decision has been severely criticized generally, and the Chancellor's theory of the function and scope of the Fourteenth Amendment has been repudiated.

*English v. Mayor and Council of Wilmington,* 2 *Marv.* 63, 37 *A.* 158, was before all of the judges of the former Court of Errors and Appeals, on a case stated. A statute provided for the construction of a sewer system for the City of Wilmington, and for the assessment of all property adjoining or with access to sewers at a fixed and uniform rate per foot of frontage and per square foot of area to a certain depth. The constitutionality of the Act was attacked on the ground, inter alia, that a lien was imposed on property without notice to the owner and without affording him an opportunity to be heard. In the course of its opinion the Court said with respect to methods of assessment, that when an assessment is made by assessors or commissioners appointed for the purpose under legislative authority, they to view the properties and levy the expense in proportion to the benefits which the properties will re-

ceive from the work proposed, it is now unquestioned and unquestionable that an opportunity for a hearing is absolutely necessary to the validty of the assessment; but where the Legislature itself, as in the case before the Court, fixes upon some definite standard, which is applied to estates by a measurement of length or quantity, or by a value independently fixed, nothing remains to be done except to make a mathematical calculation, and a hearing, or an opportunity to be heard, would be useless and futile. So, in *Dodd et al. v. Hart,* 8 *Del. Ch.* 448, 68 *A.* 397, where the statute authorized condemnation proceedings for straightening and widening a public road without notice to the owners of the property to be taken, it was held that the question of constitutional law involved had been determined in *English v. Mayor and Council of Wilmington, supra,* and that the Act was unconstitutional and void.

In this State, in conformity with the great weight of authority, the principle may be regarded as settled, that the owner of land sought to be condemned for public use is constitutionally entitled to be heard on the amount of his compensation or damages; and this demands that he have reasonable notice of the proceedings and an opportunity to appear and protect his rights.

In the instant case the petitioners were notified of the convention of the jury by personal service of the alias writ, but it is contended that the statute must contain a positive requirement of notice; and that the notice given was not required by the statute, but was merely voluntary or gratuitous. See *Spoturno v. Woods,* 8 *W. W. Harr.* (38 *Del.*) 378, 192 *A.* 689.

There is a direct conflict of authority as to the constitutionality of a statute which authorizes the taking of property by eminent domain without specifically providing

for notice to the owner. In a few jurisdictions specific provision for notice is an essential of constitutionality, and requirement of notice will not be implied. *Sterritt v. Young,* 14 *Wyo.* 146, 82 *P.* 946, 4 *L. R. A.* (*N. S.*) 169, 116 *Am. St. Rep.* 994; *Board of Education v. Aldredge,* 13 *Okl.* 205, 73 *P.* 1104. In other jurisdictions requirement of notice is based on the constitutional necessity therefor, *Swan v. Williams,* 2 *Mich.* 427; and some jurisdictions imply requirement of notice from other provisions of the statute evidently framed on the assumption that the owner would receive notice. *Baltimore Belt R. Co. v. Baltzell,* 75 *Md.* 94, 23 *A.* 74. It is not necessary, however, to review these authorities for the statute here, properly viewed, meets the strictest requirements of constitutionality.

The statute is careful to require five days' notice of the application to be made for the appointment of the commission of freeholders; ten days' notice by the freeholders to the owner of their meeting to view the premises and to assess the damages; and, in case of appeal, for that is what the reference of damages to a Sheriff's jury under the writ of ad quod damnum amounts to, the command of the statute is that the Sheriff, in the usual form, inquire of twelve impartial men of his bailiwick of the damages which will be sustained.

The writ of ad quod damnum is of ancient origin and could be issued as a writ of right when a landowner was dissatisfied with the assessment of damages by a condemnation commission. Without leave of court, upon the filing of a petition by the dissatisfied party the writ issues in the nature of an original writ in the name of the State; and it is signed, sealed, tested, dated and made returnable as are other original writs. The mandate of the writ requires the Sheriff to serve the defendant with the process, and upon ten days' notice to summon a jury of

twelve substantial and impartial men of his bailiwick, and under their oaths and affirmations to inquire of the damages that will result from the taking of the property. Upon qualifying the jury, the Sheriff conducts the inquiry, and evidence is heard with respect to the value of the property and the damages to be sustained. 2 *Woolley, Del. Pr., Ch.* 29.

This is, and for many years has been, the law with respect to the issuance, service and function of the writ. It is to be regarded as the common law of this State. Statutes are to be construed with reference to the existing law with which the Legislature is presumed to be familiar. By the requirement that the Sheriff, in the usual form, shall make inquiry of damages through the agency of a jury, it is meant by the most necessary implication that the writ of ad quod damnum be served on the opposite party in accordance with its mandate. The statute itself, therefore, provides specifically for ten days' notice to the landowner of the convention of the Sheriff's jury. Every demand of due process of law is met.

The answer discloses a defense. The motion to strike is denied.