## UNITED STATES v. 40.558 ACRES OF LAND IN NEW CASTLE COUNTY, DEL., et al.

### Civil Action No. 272.

District Court, D. Delaware.

Sept. 5, 1945.

John J. Morris, Jr., U. S. Atty., and W. Thomas Knowles, Asst. U. S. Atty., both of Wilmington, Del., and Charles M. Irelan, Atty., Department of Justice, of Washington, D. C., for petitioner.

Thomas Cooch and James R. Morford (of Marvel & Morford), and Walter J. Willis, all of Wilmington, Del., for defendants.

LEAHY, District Judge.

The United States instituted this action to acquire certain lands for military purposes for a term commencing on February 15, 1942, and expiring on June 30, 1945. A portion of these lands was owned by the Delaware Light & Power Company. The claimant here is H. T. Roberson, who is a lessee holding under an oral lease. No term was expressly limited. However, under apposite Delaware law Roberson was the tenant in possession with the right to possession until March 1, 1943. In his answer he claims compensation for the following items:

| | | |
|---|---|---|
| (a) Loss upon sale of livestock | | $2,000.00 |
| (b) Deprivation of profits and emoluments | | 8,000.00 |
| (c) Improvements to stables and dairies | 2,000. | |
| Loss upon sale of farming tools, machinery, and equipment | 2,000. | |
| and requirement to rent a house at $50.00 and spend $100.00 in moving | | 5,000.00 |
| (d) Loss of business or occupation | | 5,000.00 |

The government moved to strike claimant's entire answer for the reason that "all the claims alleged in the several paragraphs of said answer are not compensable."

1. The story behind the taking of claimant's property is one which would call forth the sympathy of any court. His small farm was located near an ATC air base outside Wilmington. It was a matter of removing his house and other farm structures at once as they endangered the landings and take-offs of the army's planes. The quick necessity for claimant to get out within a matter of hours and dispose of his stock, machinery and other farm equipment resulted in a real loss to him. But, claimant's compensation must be determined by settled rules for fixing compensation in this type of case.

His main reliance is on United States v. General Motors Corporation, 323 U.S. 373, 65 S.Ct. 357, 156 A.L.R. 390. True, in that case removal expenses were allowed, but not as a separate item of compensation; they were allowed to be considered as an element of just compensation in order to arrive at the fair market value of the property taken. The point of distinction in the General Motors case is that the government acquired merely a portion of General Motors' long-term lease and in order to fulfill its obligations under the lease General Motors was required to remove from the premises for the period of government occupancy and then at the termination of such occupancy again to move back into the property and complete its term. In the case at bar claimant's entire estate was taken by condemnation for his lease terminated by operation of law on March 1, 1943. The government's taking extended to June 30, 1945. Claimant's right to be compensated falls into the settled category of what are proper elements of damage that may be considered in evaluating the taking of the whole of a leasehold estate. It is here that claimant faces rules which are opposed to his position as to consequential damages to a business (if farming is to be considered as such) removal and relocation expenses.

The measure of just compensation under the Fifth Amendment to the Constitution in federal condemnation is not governed by state law.[1] It has been defined by the federal courts as the cash market value of the estate taken.[2] Just compensation includes, of course, all elements of value, but it can not exceed a market value fairly determined.[3] While an owner of property is entitled to be put in as good a position pecuniarily as if his property had not been condemned, this does not mean that all losses are compensable.[4] The destruction or the frustration of a farming enterprise is a matter of conse-

[1] United States v. Miller, 317 U.S. 369, 379, 380, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

[2] United States v. Miller, supra, 317 U.S. at page 374, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; United States v. Meyer, 7 Cir., 113 F.2d 387, 397, certiorari denied 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459.

[3] Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236.

[4] United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 284, 285, 63 S.Ct. 1047, 87 L.Ed. 1390.

quential damages and is not an element to be considered in arriving at market value.[5]

■ Congressional discussions (88 Cong. Rec. 1665) on the enactment of the Second War Powers Act (50 U.S.C.A.Appendix § 631 et seq.) clearly show that it was the intent of Congress that consequential damages should not be allowable in the acquisition of property taken under that statute. The institution of the present suit is bottomed on that statute.

[6-8] Consequential damages resulting from the expense incurred by an owner in moving personal property or a business from the premises condemned have been held to be non-compensable.[6] So, too, it has been held that a lessee may not recover removal expenses.[7] This is also the rule in various state courts.[8] It was said in Kansas City Southern R. Co. v. Commissioner of Internal Revenue, 8 Cir., 52 F.2d 372, 381: " * * * Compensation is unjust when the government is compelled to pay more for the use of property than the highest amount of rental that could be secured for such use." Hence, there may be no separate compensation for claimant's losses upon sale of livestock, farming tools, machinery and equipment, deprivation of "profits and emoluments," the cost of moving, or the items going to show "loss of business or occupation."[9] The item of $2,000 with respect to amounts expended in improvements to stables and dairies is, however, a proper element to be considered as this obviously is a calculable item to be included in arriving at the fair market value of the leasehold estate at the time the property was condemned by the government. This item will be permitted

to remain in the answer; but the other items will be stricken.

2. Claimant moves that the court appoint commissioners to assess his damages and thereafter if either party is dissatisfied with the award that a writ of ad quod damnum issue in accordance with the Revised Code of Delaware of 1935, §§ 2167 or 5730;[10] and if it should be ordered that the writ issue, then the United States Marshal be directed to impanel a jury to assess the damages. 40 U.S.C.A. § 258 provides: "The practice, pleadings, forms and modes of proceedings in causes arising under the provisions of section 257 of this title shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the court of record of the State within which such district court is held, any rule of the court to the contrary notwithstanding." Delaware has no general condemnation statute. Claimant urges us to follow either § 2167, which involves condemnation by railroads, or § 5730, which involves condemnation by the State Highway Department of the state of Delaware. Claimant emphasizes the applicability of this latter section because it is a statute for condemnation by a governmental agency, albeit a state governmental agency, and that § 5730 is more closely applicable to the case at bar. Claimant argues that a federal court is not free to adopt its own procedures in condemnation matters. It submits that the appointment of commissioners under § 5730 would lead to conformity "as near as may be".

■ Under § 5730 of the Revised Code of Delaware of 1935 first the commis-

---

[5] Mitchell v. United States, 267 U.S. 341, 345, 45 S.Ct. 293, 69 L.Ed. 644; Omnia Commercial Co. v. United States, 261 U.S. 502, 508-513, 43 S.Ct. 437, 67 L.Ed. 773.

[6] Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 676, 43 S.Ct. 684, 67 L.Ed. 1167; Potomac Electric Power Co. v. United States, 66 App.D.C. 77, 85 F.2d 243, 249, certiorari denied 299 U.S. 565, 57 S.Ct. 27, 81 L.Ed. 416; Futrovsky v. United States, 62 App.D.C. 235, 66 F.2d 215, 216, 217; and cf. Mitchell v. United States, 267 U.S. 341, 345, 45 S.Ct. 293, 69 L.Ed. 644; Bothwell v. United States, 254 U.S. 231, 41 S.Ct. 74, 65 L.Ed. 238.

[7] Gershon Bros. Co. v. United States, 5 Cir., 284 F. 849; United States v. Meyers, D.C., 190 F. 688.

[8] Mayor & City Council of Baltimore v.

Gamse, 132 Md. 290, 296, 297, 104 A. 429; Springfield Southwestern R. Co. v. Schweitzer, 173 Mo.App. 650, 655, 158 S. W. 1058; City of St. Louis v. St. Louis. I. M. & S. R., 266 Mo. 694, 707, 182 S.W. 750, L.R.A.1916D, 713; Ranlet v. Concord R. R. Corporation, 62 N.H. 561, 564; Matter of New York W. S. & B. R. Co., 35 Hun, N.Y., 633; Fiorini v. City of Kenosha, 208 Wis. 496, 499, 243 N.W. 761.

[9] While Roberson may not recover consequential damages in the present proceeding, he may have resort to the proper Claims Committee in the Congress for compensation for his losses.

[10] § 5730 was amended by 43 Del.Laws, c. 264, p. 1088, but the detail is not pertinent here.

sioners fix the damages. Later if the parties are dissatisfied and then the writ of ad quod damnum issues, the sheriff's (here the marshal's) jury while sitting de novo also may be said to act as a reviewing tribunal. The judge of the court issuing the writ has no supervision whatsoever of the conduct of the trial before either the commissioners or the sheriff's jury. In so far as Delaware is concerned, these proceedings are final as to the quantum of damages awarded. See Woolley, Delaware Practice, p. 972. Under the Delaware procedures the court ceases to have control over the proceedings after the appointment of commissioners. In fact, the judge does not instruct the commissioners or, under the writ of ad quod damnum, the jury, as to any legal rule of damages applicable to the proceeding. A party's legal right to be compensated or the right of the government to maintain its action are, of course, legal questions reserved to the court.

The government resists any adherence to the Delaware procedures on the ground that they are not only inadequate, in the case of a federal condemnation, but adherence in this court would deprive it of all jurisdiction over the proceedings instituted here and would afford no right of appeal. Under this view the phrase "as near as may be," it is urged, confers a large license on the court. Conformity is not required where it would not be practicable;[11] and conformity will not be had where the effect will be to impede any legislation of Congress.[12] But this does not mean that this court can turn its back on the Delaware methods of condemnation and make up its own rules for the game. This would simply mean an utter disregard of 40 U.S.C.A. § 258.

The Advisory Committee on Rules of Civil Procedure in its Preliminary Draft of Proposed Amendments, May 1944, pointed out that as late as 1931 there were 269 different methods of judicial procedure in different classes of condemnation cases. Consequently, the Committee was of the belief that we should have unanimity of procedure in condemnation matters. Originally, Rule 71A was suggested. At the 1944 Judicial Conference for this Circuit there was far from unanimity of opinion on the wisdom of such a rule; and I am informed that pro and anti views were likewise expressed throughout the country by members of the federal judiciary as well as by the bars of the various districts. In any event, it is interesting to note that in the Second Preliminary Draft of Proposed Amendments, May 1945, the Committee has temporarily withdrawn proposed Rule 71A for further consideration. The Committee apparently proposes to make a revised draft of the rule and submit it to the profession for comment. After this, I suppose, the Committee will recommend a final draft to the Supreme Court. The local district committee on Rules of Civil Procedure which I appointed several years ago, consisting of eight members of the Delaware bar, has submitted to me a local rule providing for a procedure in condemnation cases which is quite similar to and just as adequate as the original proposed Rule 71A; but as the Advisory Committee on Rules of Civil Procedure has not, as yet, formally tendered 71A in its final form to the Supreme Court, I entertain grave doubt as to a district court's power to promulgate a purely local rule covering the same subject matter, even though I am of private opinion that some rule in the form of 71A might be preferable in federal condemnation cases to the ancient writ of ad quod damnum as utilized in Delaware. In short, I conclude I am compelled to adhere to the provisions of 40 U.S.C.A. § 258 until the Supreme Court adopts a rule similar to proposed Rule 71A. While several condemnation cases have been tried in this court some years ago by a jury following the same procedures as occur in a traditional action at law, I do not think such procedure is now authorized. Federal district courts have limited jurisdiction and, to repeat, until the Congress or the Supreme Court directs otherwise, I believe that 40 U.S.C.A. § 258 must apply and that the Delaware district court is required in condemnation cases to follow "as near as may be" the Delaware procedures.

Claimant's motion for the appointment of commissioners will be granted if an appropriate order is submitted.

---

[11] Shepard v. Adams, 168 U.S. 618, 18 S.Ct. 214, 42 L.Ed. 602; Williams Live Stock Co. v. Delaware L. & W. R. R. Co., D.C., 285 F. 792.

[12] Hills & Co., Ltd., v. Hoover, 220 U.S. 329, 31 S.Ct. 402, 55 L.Ed. 485, Ann.Cas. 1912C, 252; Luxton v. North River Bridge Co., 147 U.S. 337, 13 S.Ct. 356, 37 L.Ed. 194; Chappell v. United States, 160 U.S. 499, 16 S.Ct. 397, 40 L.Ed. 510.

## Appendix

The statutory procedure which I think controls the method of determining a condemnation in this court is set out in the Delaware Revised Code of 1935, § 5730, which reads:

"Eminent Domain; Notice to Abutting Property Owners As to Building Limits:—Whenever the department cannot agree with the owner or owners of any land, building, franchise, easement, sand, earth, stone, gravel or other property necessary to be taken or used in the construction, reconstruction, or maintenance of any State highway or proposed State highway, which the department shall construct, reconstruct, straighten, widen, grade or otherwise improve, or shall propose to construct, reconstruct, straighten, widen, grade or otherwise improve, for the purchase thereof, the said department may apply to the associate Judge of the State of Delaware, resident in the County where any such property necessary to be taken is located for the condemnation of such property, first giving to the other party or owner at least five days' notice in writing of the intended application if such party or owner is within the State, and if said party or owner is unknown or without the State, or if under legal disability and having no legal representative in the State, then such notice shall be published in some newspaper in the County in which said property proposed to be taken is located at least five days prior to the intended application, and such publication shall be sufficient notice; upon application made as aforesaid, the said associate Judge shall appoint five judicious and impartial freeholders to view the premises or ascertain the easement or franchise, and assess the damages which the owner or owners will sustain by reason of the said construction, reconstruction, straightening, widening, grading, or other improvements to the highway, or the taking of such property. The freeholders shall be sworn or affirmed before some officer authorized to administer oaths or affirmations, before entering on the premises or before ascertaining the easement or franchise, faithfully and impartially to perform the duties assigned them. They shall give ten days' notice, in writing, to the owner or owners of the premises or property so proposed to be condemned or to their guardian or guardians, duly appointed, if within the State and to the said Department of the time of their meeting to view the premises or ascertain the easement or franchise; if the owner or owners are unknown or are without the State or if under legal disability and having no legal representative in the State, publication of such last mentioned notice shall be made in some newspaper in the County in which the proceedings were instituted at least ten days prior to the said meeting, and such publication shall be sufficient notice thereof. The said commissioners shall keep a record of their proceedings with their findings and awards and return the same to the Prothonotary of the County in which the said proceedings were instituted, and shall certify their findings and awards to the owner or owners of the property and to the Department; if the Department or any party in interest is dissatisfied with such findings and awards, it or he may, on application to said Prothonotary within fifteen days after such findings and awards have been made and filed, sue out a writ of ad quod damnum, requiring the Sheriff of said County, in the usual form, to inquire of twelve impartial men of his bailiwick of the damages which will be sustained as aforesaid, and their report shall be final. The said commissioners or the said jury shall, in assessing the damages aforesaid, take into consideration the benefits and advantages to the owner or owners resulting from the proposed highway improvement and set off the value of such benefits or advantages against the loss, detriment and disadvantages, which such owner will suffer, provided that in no case shall the amount estimated as and for benefits and advantages exceed the amount allowed for loss, detriment or disadvantages to such owner. The amount of damages being ascertained, the Department may pay or tender the amount thereof within two months after the same shall have been so ascertained, to the person or persons so entitled thereto, or, if the person or persons so entitled refuse to accept or reside out of or are absent from the County during all or any part of said period of two months, the same may be deposited to his credit in the Farmers' Bank of the State of Delaware, in the County seat of the County wherein such proceedings are instituted, within said time, and thereupon said property may be taken and occupied for the use and purpose for which it was condemned, provided that the Department, in its discretion, after it has made application as aforesaid for the condemnation of property, may occupy or use

104

such property without delay, and the proceedings for the ascertainment of the damages shall proceed as in this section provided, but in the event of such immediate use or occupation as last aforesaid, the Department shall pay to the owner or owners thereof if within the State, or if such owner or owners refuse to accept the amount of damages or are without the County, deposit to his or their credit in the said bank as aforesaid, within ten days after the damages have been ascertained, the amount thereof. The expenses of the assessment by the said commissioners of the damages aforesaid, of the fees of the said Sheriff and Prothonotary and of all costs incurred in the execution of the writ of ad quod damnum, shall in all cases be paid by the Department. The said Judge shall have power to fill any vacancy in any commission and thereafter the commission shall proceed as though no vacancy had occurred."

For the method of procedure and the nature of the writ of ad quod damnum, see Lewis et al. v. DuPont et al., 2 Terry 347, 22 A.2d 832.