October Term, 1914.

## CITY OF CHEYENNE v. EDWARDS ET AL.
### (No. 769.)

Eminent Domain—Municipal Corporations—Waterworks—Procedure—Statutes—Construction—Jury Trial—Final Rule—Premature Entry.

1. In construing several statutes, each relating to the exercise of eminent domain by a municipal corporation, containing confusing if not conflicting provisions with reference to the procedure, *held,* that the object of the legislation should be considered, and the language employed so construed as not to defeat or impair either the important power conferred or the right of the property owner to receive proper and just compensation for the damages sustained by him.

2. The reason for any form of procedure for the exercise of the right of eminent domain is the necessity for a showing that the property is required for a use or purpose authorizing it to be taken, and that the amount of the compensation shall be determined, respecting which the property owner is materially interested, so that the procedure is as much for his benefit as for the benefit of the public or the party seeking to appropriate his land.

3. A statute authorizing the condemnation of land in a manner prescribed, or by pursuing a method prescribed by some other statute, is not to be considered merely as conferring a power to appropriate private property, but also as protecting or intended to protect, the right of the property owner against an unauthorized taking, or a taking without just compensation.

4. Since the enactment of the several statutes authorizing cities and towns to acquire by condemnation property required for waterworks in the manner prescribed by law for condemnation by railroads (Laws 1890, Ch. 52, Secs. 1, 9, 10, Comp. Stat. 1910, Secs. 1887, 1895, 1896; Laws 1890, Ch. 64, Sec. 1, Comp. Stat. 1910, Sec. 3829; Laws 1890-91, Ch. 27, Comp. Stat. 1910, Secs. 1866, 1875, 1876), that form of procedure should be followed by cities and towns governed by the provisions of said statutes, instead of the procedure prescribed by the act of 1882 (Laws 1882, Ch. 13, Sec. 10, Comp. Stat. 1910, Sec. 3831), and, therefore, the

property owner is entitled, upon demand, to a trial by jury if dissatisfied with the award made by commissioners appointed for that purpose, as provided by the railroad condemnation statute.

5. Chapter 52 of the Laws of 1907 requiring demand for jury trial in certain condemnation proceedings to be made within fifteen days after the filing of the report of the commissioners, as amended by Chapter 96 of the Laws of 1909, making the act applicable to municipal corporations, noes not apply to the condemnation by a municipal corporation of land required in the construction, extension, and maintenance of municipal waterworks, constructed, owned and maintained by the city, but a demand for jury trial in such a proceeding was properly filed within thirty days after the report of the commissioners, as provided by the railroad condemnation statute made applicable to municipal corporations by a series of statutes enacted in 1890 and 1891.

6. "Municipal waterworks" is a term that may include, not only reservoirs, ditches, flumes, and canals, but also wells, buildings, and machinery, and pipe lines for conveying the water to the municipality and distributing the same, and, therefore, a statute authorizing the condemnation of property required for reservoirs, ditches, flumes and canals, and prescribing the procedure, made applicable to municipal corporations, is not to be construed as repealing by implication former statutes expressly authorizing municipal corporations to acquire by condemnation property required for the construction, extension or maintenance of a system of waterworks and prescribing the procedure therefor, or an inconsistent provision thereof limiting time for demand for jury trial.

7. The fact that the court had entered its final rule or order in a proceeding by a city for the condemnation of land for waterworks before the expiration of the time for filing demand for jury trial, could not operate to the prejudice of the right of the owner of the land to demand a jury trial within the time allowed therefor.

[Decided October 10, 1914].                    (143 Pac. 356).

ERROR to the District Court, Laramie County; HON. VOLNEY J. TIDBALL, Judge.

The material facts are stated in the opinion.

*John Charles Thompson,* for plaintiff in error.

Five years elapsed after the entry of the final rule or judgment in the condemnation proceeding before any effort was made by the defendants to revive it by insisting upon a jury trial. That final rule stands unchallenged. It has not been reversed or vacated, and it is now too late to grant a jury trial in the matter. That the rule thus entered was a final order reviewable on error must be conceded. (Porter v. State, 16 Wyo. 136; 23 Cyc. 672, 1055; State v. Hayes, 30 W. Va. 107; Valentine v. Bank, 10 Abb. New Cas. 188; 16 Cyc. 471; 15 Cyc. 948-950). Even if the rule was void or premature its vacation would be necessary before any further trial steps could be taken in the proceeding. (23 Cyc. 677). If there was a right to demand a trial by jury the time for filing the demand was 15 days after the report of the commissioners as provided by Chapter 96, Laws 1909, amending Chapter 52, Laws 1907, and therefore the demand relied upon not having been filed within the period so prescribed is of no force or effect.

*William C. Kinkead,* for defendants in error.

The delay in bringing the demand for jury trial to the court's attention was caused by the pendency of an action to test the validity of the proceeding brought to condemn the land in question. As soon as possible after the disposition of that action the matter was called to the attention of the trial court. The proper condemnation procedure is not that prescribed by the act of 1882, but by the later statutes authorizing the condemnation in the manner provided by law for the condemnation of real estate by railroad corporations. Without express words of repeal a previous statute will be held to be modified by a subsequent one, if the latter was plainly intended to cover the whole subject and to prescribe the only rules in respect thereto. (Tracy v. Tuffly, 134 U. S. 206; Pratt Inst. v. N. Y. City, (N. Y.) 75 N. E. 1119; Murdock v. Memphis, 87 U. S. 590; Ry. Co. v. Newcastle, (Ind.) 37 N. E. 1067). While repeals by implication are not favored, it is well settled that where

two acts are not in all respects repugnant, if the later act covers the whole subject of the earlier and embraces new provisions plainly showing that it was intended as a substitute for the first, it will operate as a repeal. (King v. Connell, 108 U. S. 395; U. S. v. Tynen, 11 Wall. 88 Brome v. County, 31 Neb. 362, 47 N. W. 1050; State v. Elev. Co., (Neb.) 106 N. W. 979; Nichol v. St. Paul, 80 Minn. 415, 83 N. W. 375; Suth. Stat. Constr. Sec. 154; Clark v. Baxter, (Minn.) 108 N. W. 838; Finding v. Foster, (Ind.) 84 N. E. 529; Thomas v. Butler, 139 Ind. 245, 32 N. E. 808; Hadley v. Musselman, 104 Ind. 459, 3 N. E. 122; 26 Ency. Law, 731-735; Lewis' Suth. on Stat. Constr. Secs. 269, 271). A general law, the intention of which is to provide a harmonious system throughout the State, will repeal prior special acts. (In re Troy Press Co., (N. Y.) 79 N. E. 1006). Though an act contains no express words of repeal, it will repeal a former act if revising the whole subject and evidently intended as a substitute for the former statute. (Freeman v. People, (Ill.) 89 N. E. 667; Allen v. People, 84 Ill. 502). At the first session of the State Legislature an act was passed covering the whole subject of municipal authority "to construct, extend, maintain and regulate a system of water works", and condemn lands either in or out of the city for such purposes. (Laws 1890-91, Ch. 27). It was made applicable to all cities and towns in the State, and was evidently intended to be uniform throughout the State. It was plainly intended to prescribe the only rule governing the subject, and must be held to have repealed former statutes relating to the same matter. (Bradley Mach. C.o v. Mussey, 103 Pac. 37; Rogers v. Ry. Co., 91 Fed. 299; U. S. v. Tynen, 11. Wall. 88; Cook v. Bank, 107 U. S. 445). The statute regulating the condemnation of property by railroad companies presents an expeditious method therefor and should control all corporations having the right of eminent domain. Indeed the last territorial legislature declared that the Territory, counties and municipal corporations, shall have the right of eminent domain for all necessary public purposes, and that

such power of condemnation shall be exercised in the manner prescribed by law for the condemnation of real estate by railroad corporations.    (Rev. Stat. 1899, Sec. 2913, Comp. Stat. 1910, Sec. 3829).    By this statute the procedure is prescribed by mandatory language, viz: that the power *shall* be exercised in the manner, &c.    This was sufficient to repeal the provisions originally enacted in 1882. There is no indication in the title to the act of 1909 amending the act of 1907 that it would be made applicable to municipal corporations.    The parenthetical provision in the act making it so applicable is not germane to either the subject of the original act or the amendment.    The general purpose of an amendment is limited by the specific declarations thereof contained in the title.    (McDade v. People, 29 Mich. 50; Board v. Detroit, 30 Mich. 505).    Where particular words are followed by general ones, the general are restricted in meaning to objects of a like kind with those specified.    (Rohlf v. Kasemeier, (Ia.) 118 N. W. 276; State v. Jackson, (Ind.) 81 N. E. 62; Board v. Gason, (N. Y.) 89 N. E. 55).    In this State it is sufficient, when amending, altering or repealing an act, to designate the act to be amended by title.    (Comm'rs. v. Stone, 7 Wyo. 280; Comp. Stat. Sec. 3618).    Is it not reasonable, therefore, to infer from the language of the title of the amending act of 1909 that the amendment was to be restricted to the specific purpose of prescribing additional procedure to be followed, rather than to enlarge upon the statute amended so as to extend the power of eminent domain for the purposes specified to other corporations?    The title of an act is to advise the members of the Legislature and others of its purpose. However, if the act as amended is not repugnant to the prior legislation giving to municipal corporations the right to condemn land for water works purposes in the manner prescribed by law for the exercise of the right by railroad companies, then both statutes must stand.    The act containing no express repealing clause, a repeal, if any, must have occurred by implication, and such a repeal is not favored and to have that result the implication must be necessary,

from positively repugnant provisions. (State v. Owen, 7 Wyo. 84; Standard Cattle Co. v. Baird, 8 Wyo. 144). Separate acts covering a matter of procedure may be only cumulative, and not inconsistent or repugnant. (Raudebaugh v. Shelly, 5 O. St. 507; Reynolds v. Hanrahan, 100 Mass. 313; Arzonica v. Board, (N. J.) 69 Atl. 540). We think it evident that it was not intended by the act of 1909 to repeal any prior acts, or to limit the power of eminent domain as theretofore existing.

POTTER, JUSTICE.

This is a condemnation proceeding brought by the City of Cheyenne to acquire certain land alleged to be required for the purpose of constructing a dam and maintaining the same and a reservoir thereon as a part of a proposed extension and enlargement of the system of water works of that city. The case is here on error for the review of certain orders of the District Court having the effect of granting a trial by jury to determine the compensation to be made to the respondents as owners of the land, upon their written demand therefor filed after an assessment of the compensation had been made and certified by appraisers, so-called, who had been appointed for that purpose, and after a rule or order had been entered, to which the respondents excepted, approving and confirming the certificate of the appraisers, reciting a deposit of the amount of the compensation, as so ascertained, in the county treasury to the credit of the respondents, and declaring that the lands, describing them, had been condemned and appropriated for the purposes aforesaid.

The question presented by the several assignments of error is whether the respondents, the defendants in error here, are entitled to a jury trial upon their said demand. Their right thereto was challenged in the District Court by several motions filed by the plaintiff on three grounds which may be stated substantially as follows: 1. That the statute under which the condemnation proceeding was brought and heard does not provide for or authorize a trial by jury. 2.

That no appeal having been taken from the rule or order confirming the certificate of the appraisers, and the time therefor having expired, the proceeding was thereby finally disposed of.   3.   That if a jury trial might at any time have been properly demanded, the demand of the respondents was not filed within the period limited by law.   The same grounds are urged in this court.   Without describing more specifically the several motions of the plaintiff opposing the demand for jury trial, we deem it sufficient to say that the object thereof was to have the case dismissed from the trial docket, and the application or demand for jury trial dismissed or stricken from the files.   It does not appear that all of such motions were ruled on, but those considered were overruled and the order entered thereon shows that the court refused to dismiss the cause or strike the said demand of the respondents from the files; and by a later order made on motion of respondents for a change of venue the cause was transferred to the District Court in and for Platte County for trial before a jury.   This last mentioned order is one of the orders here complained of, it being objected to on the sole ground that a further trial of the cause is unauthorized.

The controversy respecting the question thus presented results from the unfortunate jumbled and confusing condition of the statutes relating to the procedure in cases of this kind.   The difficulty is in determining what statute applies.   This proceeding was commenced by the service of the initial notice and the filing of the petition in September 1908.   The order appointing appraisers was made October 24, 1908; and the certificate of the appraisers was filed, and the rule or order aforesaid confirming and approving it was made and entered February 27, 1909.   The demand for a trial by jury was filed March 27, 1909.   Some of the statutes necessary to be considered are referred to and the discrepancies between them pointed out in Edwards v. City of Cheyenne, 19 Wyo. 110, 114 Pac. 677, 122 Pac. 900. In that case the respondents, defendants in error here, were seeking to have the city and its officers enjoined from using

or occupying the premises here involved, claiming among other things that the proceeding brought to condemn the premises, the same proceeding now before the court, had been instituted and heard under a provision of the statute which did not apply to the City of Cheyenne, or had been repealed by subsequent legislation if it had at any time applied to said city. It was held that the statute was, if in force, applicable to said city, but it was found unnecessary to decide whether it had been repealed by later legislation for the reason that the petition in the case did not sufficiently show that the condemnation proceeding had been brought and heard only under that statute, or that the rights claimed by the respondents under other provisions of the statute had been denied them.

When this proceeding was commenced the various provisions necessary to be considered were found in the Revised Statutes of 1899, with the exception of an act passed in 1907, which, as amended in 1909, is relied upon by counsel for the city in support of the contention that the demand for jury trial was not filed within the time allowed by law. All of the provisions aforesaid, including the act of 1907 as amended in 1909, are incorporated in the Compiled Statutes of 1910. Much of the confusion arising from a reading of the provisions as they appear in the Revision and Compilation, respectively, can, we think, be avoided and the legislative intention better ascertained by considering them in the order of their enactment and by reference to the several original acts. In the former case between these parties, above cited, it was contended that the condemnation proceeding had been improperly instituted and heard under the provisions of Section 2915 of the Revised Statutes of 1899, which is now Section 3831 of the Compiled Statutes of 1910, and counsel for the city insisted that the provisions of that section had been continued in force and might properly be followed by the city in acquiring the land in question. That section as it appears in the Compiled Statutes reads as follows:

"Sec. 3831.   Whenever any water company or incorpo-
rated city or town of this State shall require any land, real
estate, or claim, or right of way, for construction and main-
tenance of water works; or any land which may be affected
by any operation connected with the construction or main-
tenance of the same, such water company or incorporated
city or town may acquire such land, real estate, claim or
right of way, in the same manner as is provided by Section
3872, and said section shall be so construed to be as appli-
cable to such water company, incorporated city or town as
it is now applicable to road, ditch, or telegraph companies
specifically named therein."

The provisions thus quoted were originally enacted as
Section 10 of Chapter 13 of the Laws of 1882, which was
an act entitled:   "An Act to enable the City of Cheyenne
to provide a water supply for the inhabitants thereof, to ex-
tinguish fires, and for other purposes."   The act authorized
the City of Cheyenne to either lease and grant for a term
of years the exclusive right to construct and maintain a
system of water works, to supply the city with water for
the extinguishment of fires, and the inhabitants thereof
with water for domestic, manufacturing and for other pur-
poses, or, itself to construct, own and control the water
system, and in that event to issue and dispose of a sufficient
amount of bonds for that purpose, not to exceed the sum of
seventy-five thousand dollars.   These provisions appear in
the Compiled Statutes in Sections 1393 to 1403, inclusive.
It will be observed that Section 3831 refers to another sec-
tion of the Compilation, viz:   Section 3872, for the proce-
dure in exercising the power thereby conferred.   The words
of the reference to this procedure in the original act of
1882 were as follows:   "in the same manner as is provided
by Section 45 of an act entitled, 'An Act to create and reg-
ulate corporations,' approved December 10th, 1869, and said
section shall be construed to be as applicable to such water
company, incorporated city or town as it is now applicable
to road, railroad, ditch or telegraph companies specifically
named therein."   At that time the section so referred to

prescribed a form of procedure for the condemnation of land by road, railroad, ditch, telegraph or fluming companies. In 1901 it was amended and re-enacted so as to authorize a resort to its provisions by telephone companies, and as so amended and re-enacted it appears in the Compilation of 1910 as Section 3872 aforesaid. It became inoperative as to railroads in 1888 through the enactment of a separate statute for condemning land required for railroad purposes. This statute now found in Section 3872 of the Compiled Statutes was considered at length in the case of Edwards v. City of Cheyenne above referred to. It is deemed sufficient here to say of its provisions that it provides for presenting a petition to the District Judge setting forth the lands required to be taken or affected by the proposed use, and the name and residence of each owner or person interested therein, so far as known, and praying the appointment of three appraisers to ascertain the compensation to be paid for the land; that such appraisers shall be appointed upon a showing that the prescribed notice has been given of the intended application; that there shall be a hearing and determination by the appraisers, and the filing of a certificate of their assessment; and that upon the payment or deposit of the amount, a rule shall be entered describing the lands, the ascertainment of the compensation and the mode of making it, whereupon, it is declared, that the petitioner shall become seized of the land in fee, or shall have the exclusive right thereto and the possession thereof. The section has not at any time provided for a trial by jury, but only as to assessing the compensation that the same shall be determined by appraisers appointed by the court or judge for that purpose.

In 1888, as above stated, a separate statute was enacted authorizing the exercise of the right of eminent domain by railroad companies, and prescribing in detail the method of procedure therefor. (Laws 1888, Ch. 56; Rev. Stat. 1899, Secs. 2916-2952; Comp. Stat. 1910, Secs. 3833-3869). The general form of the procedure under the older statute is followed by this later act (see Edwards v. City of Chey-

enne, *supra*), but the provisions in some respects are more specific, and for the first time in any of the legislation in this State on the subject provision was made for a trial by jury; it being provided that either party may demand such a trial if dissatisfied with the award made by the commissioners. Express authority for a review of the award of the commissioners upon exceptions was also provided for. The material provisions in those respects are as follows:

"The award of the said commissioners may be reviewed by the court in which such proceedings may be had, on written exceptions filed by either party, within thirty days after the filing of such certificate; and, upon good cause shown, the court may order a new assessment, or may make such other order as right and justice may require. If no sufficient exceptions be filed within the said thirty days, and if no application be made within such time for a jury trial, as provided in the next succeeding section, the report of the commissioners shall be confirmed." (Comp. Stat. 1910, Sec. 3849).

"When an assessment shall have been regularly made by the commissioners, as aforesaid, either party, within thirty days after the filing of the certificate of such assessment, if not satisfied with the award, may demand, and shall be entitled to, a trial by jury in the District Court, by filing in the proceeding a written application to that effect, accompanied by an affidavit that such application is made in good faith, and not for the purpose of delay; and that the affiant verily believes injustice has been done the applicant by the award of the commissioners. If such jury trial be so demanded after an assessment is regularly made, then no new assessment by commissioners shall be ordered under the last preceding section." (Id. Sec. 3850).

"When a jury trial shall have been so demanded, the jury shall determine the compensation proper to be made to the owners and persons interested for the taking or affecting of such real property." (Id. Sec. 3851).

"The said trial by jury shall be conducted in the same manner as trials by jury in civil actions, and, except as

otherwise provided in this chapter, the provisions of the code of civil procedure relating to new trials, bills of exceptions and proceedings in error shall constitute the rules of practice in all proceedings under this chapter, so far as the same may be applicable." (Id. Sec. 3852).

After the enactment of the statute containing these provisions, three other statutes were enacted authorizing municipal corporations to acquire land in the manner provided for railroad companies. The first of these acts was approved March 13, 1890, and was entitled: "An Act to confer additional powers upon municipal corporations, and for other purposes." By Section 1 thereof it was provided that in addition to other powers provided by law each incorporated city or town shall have power: First—To establish, construct, purchase, extend, maintain and regulate a system of sewerage. Second—To establish, construct, purchase, extend, maintain and regulate highway viaducts, and a system of water works. Third—To establish, construct, purchase, extend, maintain and regulate a system of ditches, aqueducts, and reservoirs, for supplying water to its inhabitants, and to its streets, parks and public grounds for irrigating purposes." In Section 9 it was provided: "For any of the purposes specified in this act, any city or town may go beyond its territorial limits, and may take, hold and acquire property by purchase or otherwise, shall have power to take and condemn all necessary lands and property therefor in the manner provided by the laws of this territory, relating to condemnation of real estate by railway corporations." It was declared in Section 10 that the act was intended to apply to all cities and towns, "now or hereafter existing in the Territory of Wyoming, whether incorporated by special charter or under general laws, and to be of general and uniform operation throughout the Territory," and also that, "its provisions are in addition to all laws and provisions now in force, and shall not be construed to impede or to be impeded by, or impair, or to be impaired by the operation of any general or special law not necessarily inconsistent with the provisions hereof." The

act did not contain any express repealing clause. (Laws 1890, Ch. 52; Rev. Stat. 1899, Secs. 1735, 1743, 1744; Comp. Stat. 1910, Secs. 1887, 1895, 1896). Another act of the same session, approved March 14, 1890, entitled: "An Act providing for the exercise of the right of eminent domain by the Territory, counties and municipal corporations", provided as follows: "The territory, the counties and each municipal corporation, shall have the power to purchase or acquire by condemnation, any real estate, including streets, alleys or public highways, as sites for public buildings, or for any other necessary public purpose, and to take therein the fee simple absolute, which power of condemnation shall be exercised in the manner prescribed by law for the condemnation of real estate by railroad corporations. Proceedings in condemnation as aforesaid shall be conducted in the name of the territory, county or municipal corporation, as the case may be, and by the Attorney General, when for the territory; the county attorney, when for a county; and the municipal attorney, when for a municipal corporation." (Laws 1890, Ch. 64, Sec. 1; Rev. Stat. 1899, Sec. 2913; Comp. Stat. 1910, Sec. 3829). This act was very clearly a substitute for the provisions of an act passed in 1886, embraced in Section 499, Revised Statutes of 1887, conferring power upon the Territory to purchase, or acquire by condemnation any real estate as a site for any public building or buildings, or for any other necessary public purpose, and providing that such power shall be exercised in the manner prescribed for the condemnation of real estate by certain corporations "under the provisions of Section 45 of an act entitled 'An act to create and regulate corporations', approved December tenth, eighteen hundred and sixty-nine, so far as the same are applicable," and providing that the petition for the appointment of appraisers, shall be presented by the Attorney General in the name of the Territory. It is important to notice that the provisions substituted by said act of 1890 for those enacted for the benefit of the Territory in 1886 not only referred to a different statute for the procedure, but ex-

tended the operation of the statute so as to include cities and towns, and by the use of mandatory language adopted the procedure prescribed by the statute relating to the condemnation of land by railroad corporations.

The other of the three acts above mentioned was passed at the first session of the State Legislature, and approved January 6, 1891, and was similar to the act of March 13, 1890. By the first section of the act power was conferred upon each incorporated city or town, in addition to other powers conferred upon them by law, "to construct, purchase, extend, maintain and regulate a system of water works to supply said city or town with water for the extinguishment of fires, and for supplying the inhabitants thereof with water for domestic, manufacturing and other purposes." By Section 11 it was provided that for the purpose of carrying out any of the powers conferred by the act any city or town may go beyond its corporate limits, and may take, hold and acquire property by purchase or otherwise, and "it shall have power to take and condemn all necessary lands and property therefor, in the manner provided by the laws of the State, relating to the condemnation of real estate by railroad companies." By Section 10 the act was declared to apply to all cities and towns, whether incorporated by special charter or under any general laws. (Laws 1890-91, Ch. 27; Rev. Stat. 1899, Secs. 1704, 1713, 1714; Comp. Stat. 1910, Secs. 1866, 1875, 1876). There was no express repealing clause in this act. Section 2 of the act authorized the issuance of bonds for the purpose of providing funds for constructing, purchasing or extending a system of water works, limiting its authority to cities or towns having a population of more than three thousand, and an assessed valuation of half a million dollars. But in 1893 the section was amended so as to permit any incorporated city or town to issue bonds as therein provided. (Laws 1893, Chap. 16, Sec. 1; Rev. Stat. 1899, Sec. 1705). The section was again amended in 1909 as to a matter not material here. (Laws 1909, Chap. 97; Comp. Stat. 1910, Sec. 1867).

The provisions of these three acts are not inconsistent concerning the procedure to be followed in the condemnation of land by an incorporated city or town, required for the construction, extension and maintenance of a system of water works.   It is therefore unnecessary to determine which one, as between the three, should be considered as the ruling statute.   While one is devoted wholly to providing for the exercise of the right of eminent domain for acquiring land as sites for public buildings "or for any necessary public purpose", two of the statutes authorize the construction, extension and maintenance of a system of water works, and the acquisition of land required therefor; the provisions of the latest in time of enactment being confined to that purpose, and the first granting authority also to establish, construct, extend, maintain and regulate highway viaducts; and a system of ditches, aqueducts and reservoirs, for supplying water to the inhabitants, streets, parks and public grounds for irrigating purposes, and to acquire land by condemnation in the manner stated for any of those purposes.   In determining the effect of these statutes upon the provision as to procedure found in the act of 1882 (Comp. Stat., Sec. 3831), we shall exclude from present consideration the fact that the act of 1890 conferring authority upon the Territory (State), and counties, as well as cities and towns, provides that the power "shall" be exercised in the manner therein stated, for there is, we think, a broader ground to support our conclusion, applicable to all these statutes.   The one thus particularly referred to, however, tends strongly, to indicate a legislative intent to prescribe a procedure different from that previously adopted for cities and towns, aside from the mandatory language employed, since it displaced the act of 1886 and substituted for it the procedure prescribed by the act of 1888.   Certainly as to the condemnation of land by the State the conclusion would be irresistible that the Legislature intended by the act of March 14, 1890, that thereafter the procedure for condemnation by railroad companies should be followed.   At that time the provision of Section 10 of the act

of 1882, as to the condemnation of land by cities and towns for water works, appeared in a chapter in the Revised Statutes of 1887 containing only that section and one other; the latter containing the provisions of the act of 1886 authorizing the condemnation of land by the Territory. (R. S. 1887, Secs. 499, 500). And it is plain, we think, that the Legislature had in mind these two provisions. Whether the general language of this act as therein used respecting the purpose for which land may be condemned, would be sufficient to include water works and thereby repeal the provision of the act of 1882, so far as it related to an incorporated city or town, need not, however, be determined. The fact that the same procedure—that prescribed by the act of 1888—is referred to in the other act of 1890, and also in the act of January 6, 1891, strengthens the proposition that it was intended at least to grant to the parties whatever advantage there might be in a resort to the provisions of the form of procedure so referred to; notwithstanding that the language of the reference is permissive in form and, taken literally, might not be inconsistent with the earlier act granting authority to proceed in a different manner.

In construing these statutes we think the object of the legislation should be taken into consideration, and that the language employed should be so construed as not to defeat or impair either the important power conferred or the right of the property owner to receive proper and just compensation for the damages sustained by him—a right preserved by the constitutional provision that private property shall not be taken or damaged for public or private use without just compensation. The reason for any form of procedure for the exercise of the right of eminent domain is the necessity for a showing that the property is required for a use or purpose authorizing it to be taken, and that the amount of the compensation shall be determined. These are matters in which the property owner is materially interested, so that the procedure is as much for his benefit as for the benefit of the public or parties seeking to appropriate his land. A statute, therefore, authorizing the condemnation

of land in a manner prescribed, or by pursuing a method prescribed by some other statute, is not to be considered merely as conferring a power to appropriate private property, but also as protecting, or intended to protect, the right of the property owner against an unauthorized taking, or a taking without just compensation.   The proposition that because the later statutes provide that for the stated purposes the city shall have power to take and condemn land in the manner provided by law for the condemnation of land by railroad companies, without declaring that the procedure *shall* be conducted in that manner, the city has the option of selecting exclusively the method prescribed by the earlier act, so as to deprive the property owner of the rights which would be his under the provisions of the later act seems to us to be so palpably unjust that we should hesitate long before accepting it as sound.   We see no reason for holding that one party should have such an option any more than the other.   It is the duty of the judge or court to apply to the proceeding the provisions of law deemed to be applicable.   It is significant that after the provisions were enacted prescribing the method for the condemnation of land by railroad companies, the Legislature in each of the three acts aforesaid referred to the provisions thereof for the procedure in exercising the power conferred.   It seems to us that this discloses an intention on the part of the Legislature to substitute the procedure of those provisions for the method previously adopted, so far as the same differed substantially therefrom.   This conclusion is aided by a consideration of other statutes forming a part of the history of the legislation on the subject, though not controlling the present proceeding.   The railroad condemnation act was approved March 8, 1888.   On March 9, 1888, an act was approved providing in one of its sections that every school district shall have the power to acquire by condemnation any real estate within the district as a site for any public school house or school grounds, and that such power shall be exercised in the manner prescribed by law for the condemnation of real estate by railroad corpor-

ations. (Laws 1888, page 164; Rev. Stat. 1899, Sec. 2419;
Comp. Stat. 1910, Sec. 3830). The general law, defining
cities of the first class, regulating their organization and
government, and prescribing their powers, has, since its en-
actment in 1895, contained a provision authorizing the cities
governed thereby to exercise the power of eminent domain
for certain specified purposes, or "for any necessary or
authorized public purpose", and requiring that the proceed-
ing for determining the compensation to be paid for the
land taken shall be brought in the District Court and con-
ducted as by law provided for condemnations by railroad
companies. (Laws 1895, Sec. 52, par. 19; Rev. Stat. 1899,
Sec. 1637; Comp. Stat. 1910, Sec. 1671). And we have
failed to find in our legislation since the railroad act afore-
said was passed any statute referring to or adopting for
any other purpose the method of procedure contained in
the general corporation act, except that in 1901 the section
prescribing it was amended and re-enacted so as to include
telephone companies within its provisions.

Attention has been called to the fact that the act of
March 13, 1890, authorizes the taking of land for other
municipal purposes than water works; and that the act of
March 14, 1890, aside from the general power conferred,
authorizes land to be taken as a site for a public building.
The method of obtaining land for these several specified
purposes was not provided for in the act of 1882, nor was
the power to condemn for those purposes conferred there-
by. Hence for any purpose other than water works men-
tioned in the two acts of 1890 and the act of 1891, respec-
tively, they provided the only method for acquiring the re-
quired land by condemnation. We think it inconceivable
that by these acts the Legislature intended that the single
method of procedure thereby provided should apply with
any less force to the taking of land required for water
works than for any of the other purposes specified therein.
We conclude, therefore, as to the effect of these acts, that
the respondents would be entitled to a trial by jury by fol-
lowing the provisions of the railroad condemnation statute

unless there is a later statute to the contrary applicable to this proceeding. It would not be very material at this stage of the proceeding whether in hearing the petition and procuring an assessment of the compensation to be made by appraisers, so-called, the court acted upon the theory that the only provisions applicable were those of the procedural statute referred to in the act of 1882. As pointed out in Edwards v. City of Cheyenne, *supra,* there is little, if any, substantial difference between the two methods of procedure above considered up to and including the filing of the certificate of the assessment made by appraisers or commissioners. And it appears that by an order entered shortly after the proceeding was commenced, the city, upon giving the required bond securing the payment of the compensation when determined, was allowed to and did enter into possession of the premises, constructed its dam and is now maintaining a reservoir thereon; a right which is provided for by either procedural statute; each also providing that when possession has been so taken the property owner may conduct the proceeding to a conclusion if the same shall be delayed by the condemning party.

It is not contended here that there is any later statute denying the right to a jury trial in a condemnation proceeding brought by a municipal corporation. It is contended, however, that a statute enacted in 1907 was amended by an act approved February 27, 1909 (the date of the filing of the certificate of the appraisers) so as to apply to this proceeding and to require that the demand for jury trial shall be filed within fifteen days after the filing of the certificate of the commissioners, instead of thirty days as provided in the statute aforesaid relating to railroad companies; and that therefore the application or demand of the respondents for such trial not having been filed within said period of fifteen days was filed too late to entitle it to consideration. The statute thus relied upon we will now consider. The act was published in the laws of 1907 as Chapter 52, and was entitled: "An Act providing for and prescribing the procedure to be followed by persons, associations of per-

sons, companies and corporations in the exercise of the right of eminent domain in the condemnation, taking and using private property of others for ways of necessity for reservoirs, drains, flumes, ditches and canals for agricultural, mining, milling, domestic or sanitary purposes." Municipal water works, municipal corporations or municipal purposes were not specifically mentioned in this title, nor in the body of the act. The first section of the act provided that every person, association of persons, company or corporation organized under the laws of this State or the laws of any other State, and legally doing business under the laws of this State, shall have power and are authorized to take and condemn land required as a way of necessity "in the course of their business" for reservoirs, drains, flumes, ditches or canals for agricultural, mining, milling, domestic or sanitary purposes, or that may be necessary for the location, construction and convenient maintenance and use of any such reservoir, drain, flume, ditch or canal, or any branches thereof, or the re-location of the whole or any part thereof. The remaining sections prescribed the procedure for acquiring property thus authorized to be taken; the provisions thereof following quite closely the statute regulating the condemnation of lands by railroad companies. But it did not expressly authorize the condemning party to obtain an order for possession pending the proceeding. With that exception the only substantial difference between the provisions of this act of 1907 and the statute prescribing the mode of procedure by railroad companies is found in the limitation of the time for filing exceptions to the award of the commissioners, or the demand for trial by jury, and for commencing a proceeding in error. We think it clear that the act as passed in 1907 did not apply to municipal corporations, or interfere in any way with previous legislation then in force controlling the exercise by such corporations of the power of eminent domain. So far as corporations were referred to those in the mind of the Legislature seem to have been business corporations. The act did not expressly repeal any previous

legislation, but contained a section repealing all acts or parts of acts inconsistent or in conflict therewith. But this act was amended in certain particulars by an act approved February 27, 1909, under the provisions of which it is claimed that the procedural provisions of the act were made applicable to this proceeding. This amendatory act was entitled as follows: "An Act prescribing additional procedure to be followed in the exercise of the right of eminent domain in the condemnation, taking and using private property of others for ways of necessity, and amending and re-enacting Sections 1 and 10 of Chapter 52, Session Laws of Wyoming, 1907." The first section of the act declared Section 1 of Chapter 52 of the Session Laws of 1907 to be amended and re-enacted so as to read as follows (quoting only that part containing the changes made in the section) :

"Every person, association of persons, company or corporation (the word "corporation" including a municipal corporation wherever appearing in this act), organized or hereafter organized under the laws of this State, and legally doing business under the laws of this State, who shall in the course of their business require a way of necessity for reservoirs, drains, flumes, ditches, canals or electric power transmission lines, on or across the lands of others for agricultural, mining, milling, domestic, electric power transmission, municipal or sanitary purposes, shall have power and are authorized to enter upon any land for the purpose of examining and making surveys for reservoirs, drains, flumes, ditches, canals or electric power transmission, or any branch or branches thereof, or for the purpose of changing any part of the original lines of any reservoir, drain, flume, ditch, canal, or electric power transmission lines, belonging to the corporation or person applying for such right of way, already constructed, owned by such person, association of persons, company or corporation, seeking to exercise the powers herein, to take, hold and appropriate so much real property as may be necessary for the location, construction, and convenient maintenance and use of such reservoir, drain, flume, ditch, canal or electric

power transmission line, or any branch or branches thereof, or for the relocation of the whole or any part thereof, or any line to which such person, association of persons, company or corporation, may desire to change or to enlarge any such reservoir, drain, flume, ditch, canal or electric power transmission line owned by any such person, association of persons, company or corporation; to enlarge any ditch, flume, drain or canal used for the conveyance of water, for the purpose of conveying additional waters in and through the same; to take and appropriate material for the construction and repair of any such reservoir, drain, flume, ditch, canal or electric power transmission line; to take, hold and appropriate a right of way over any such lands or adjacent lands sufficient to enable such persons, associations of persons, companies or corporations, to construct, repair, use and maintain any such reservoir, drain, flume, ditch or canal, or electric power transmission line upon the line of the location or re-location thereof."  (Laws 1909, Ch. 96, p. 142; Comp. Stat. 1910, Sec. 3874).

Upon a comparison of the part of the section quoted with the corresponding part of the section as originally enacted it will be noticed that as amended, power is conferred to take and condemn land required for "electric power transmission lines", and that its provisions are extended or attempted to be extended to municipal corporations by stating in a parenthesis that the word "corporation" shall include a municipal corporation wherever appearing in the act.  There is no express provision in the act that it shall or shall not apply to pending proceedings.  As above stated it was approved on the same day that the certificate of the appraisers was filed. If it brought this proceeding within the operation of the provisions of the act of 1907, it required the respondents to make their demand for a jury trial by filing it within fifteen days after the act having that effect was approved, and long before it could have been published and its provisions generally ascertained.  The title, however sufficient it may have been to authorize the enactment of the provisions contained in the body of the act, would certainly convey no general

notice even if published that it was intended to extend the provisions of the act of 1907 to municipal corporations, or to extend the power conferred to any municipal purpose. Hence its provisions limiting the time for filing a demand for jury trial when applied to a proceeding not previously conducted under the statute amended, and to which that statute did not formerly apply, would very likely have the effect of preventing a party from securing such a trial, where as in this case, the time for filing the demand had already commenced to run. It is to be borne in mind that the provisions which might apply this limitation of the time to a pending proceeding did not change the corresponding provision of the railroad condemnation statute. In view of this situation and the fact that the city had already taken possession so that the only thing left for the respondents was to secure a just compensation, it might perhaps properly be held that this act of 1909 ought not to be applied to this proceeding on the ground that it unreasonably limited the time for excepting to the award of the appraisers and for applying to have the compensation assessed upon a trial by jury. But we need not place our conclusion as to this statute upon that ground. We think there are several things to be considered which distinguish this statute from the previous legislation on the subject.

The act of 1907 was passed at the next session of the Legislature following the decision of this court in Sterritt v. Young, 14 Wyo. 146, 82 Pac. 946, 4 L. R. A. (N. S.) 169, 116 Am. St. Rep. 994, declaring unconstitutional a then existing statute authorizing the acquirement of a right of way over the lands of others for an irrigating ditch by any person owning lands in the locality of any creek, river or other natural stream of water, for the reason that it failed to provide for notice to the land owner of the time and place of the meeting of the board of appraisers. It was remarked in the opinion in that case that the defect as to notice would no doubt be corrected should another act be passed upon the subject. We have supposed that this act of 1907 was

passed partly for the purpose of curing the defect in the former statute, which was the only one providing for securing a right of way over the lands of others for an individually owned ditch. And we think that by the original provisions in section one of the act the purpose is clearly disclosed not to interfere with any legislation respecting the subject of municipal water works. While the amendatory act extends the provisions of the act to municipal corporations, and refers to reservoirs, ditches, flumes and canals for "municipal" as well as for the other purposes stated in the original act, there is no mention of municipal water works, a term that may include not only reservoirs, ditches, flumes and canals, but also wells, buildings and machinery, and pipe lines for conveying the water to the municipality and distributing the same. And it is alleged in the petition in this case that the land in question is required as a site for the construction of a dam and the maintenance of a reservoir in connection with the enlargement and the extension of the system of water works of the city, by which it is proposed and intended to accumulate and store water for the use of the city and to carry the same from said reservoir by means of a pipe line to be constructed a distance of twenty-five miles and more to the city limits. Rather than hold that the words "reservoirs, ditches, flumes and canals" might include a pipe line and other accessories of a system of water works, we deem it more reasonable and more consonant with the statutory rules of construction to harmonize the provisions of this later statute with previous legislation by construing it as not including or applying to the taking of land required in the construction, extension and maintenance of municipal water works, constructed, owned and maintained by the municipal corporation. Indeed by the act of March 13, 1890, the Legislature seems to have distinguished a system of municipal water works from a system of ditches, aqueducts and reservoirs.

Again, as above stated, when this proceeding was instituted the city was authorized upon obtaining an order to that effect, and giving security as provided by the law then

in force, to take and occupy the property, and upon so taking possession it was expressly prohibited by the railroad condemnation statute, which we hold to have been applicable to this proceeding so far at least as its provisions differed substantially from the procedure previously adopted, from abandoning or dismissing the proceeding, and by the provisions of each of the former procedural statutes when the condemning party had so taken possession, if it should delay further prosecution of the proceeding, the property owner is permitted to carry it to a conclusion to have the proper compensation assessed.   No such provisions appeared in the act of 1907 when this proceeding was commenced and when the order granting the right to the city to take possession was made and entered.   Provisions to that effect were incorporated in the amendatory act of 1909. But clearly those provisions could not have applied to this proceeding, since the order for possession had previously been entered and the city had given the required bond and taken possession thereunder.

Another provision of the act of 1907 which we think important to notice in this connection is that contained in Section 1, and retained in re-enacting the section in 1909, limiting the quantity of land to be taken and appropriated against the consent of the owner to one hundred feet in width on each side of the outer sides or marginal lines of any such reservoir, drain, flume, ditch or canal, unless a greater width is necessary for excavation, embankments or depository for waste earth.   The quantity of land allowed to be taken was not so limited by the law in force when the proceeding was commenced and there is nothing in the record to show that such a limitation was applied to the proceeding or that the land described as necessary to be used was so confined or limited.   And it is at least doubtful whether that limitation contained in the act of 1907 by being applied to municipal corporations by the act of 1909 could then constitutionally have been attached to the right of the city previously secured by the prosecution of this proceeding.   And if that provision could not apply to the present proceeding

in that respect, it would certainly be unreasonable to require that the compensation for that part of the land over and above the quantity as limited by the act of 1909 should be determined by its provisions, rather than by the provisions of the act under which the proceeding was authorized when it was commenced and possession had been acquired.

Another objection urged against the allowance of a trial by jury in this proceeding is that before the demand for jury trial was filed, the court had entered its final rule or order in the proceeding. Under the statute which we have held to be in force and to govern this proceeding so far at least as it differs from the earlier statute, this order was prematurely entered. (C. S. 1910, Secs. 3849, 3853, 3856). And it cannot be held to operate to the prejudice of the right of the respondents to demand a trial by jury within the time allowed therefor. (Tracey v. Altmyer, 46 N. Y. 598, 604; Kansas City, Ft. Scott & So. R. Co. v. Cox, 41 Mo. App. 499, 502; Cunningham v. Nassau Elec. R. R. Co., 40 App. Div. (N. Y.) 211, 212; 58 N. Y. Supp. 22). It is provided in Section 3849 that if no sufficient exceptions be filed within thirty days, and if no application be made within such time for a jury trial, the report of the commissioners shall be confirmed. By Section 3853 it is provided that where the matter has been tried by a jury, then after its verdict has been returned and entered of record, unless a new trial shall be granted upon motion to be filed within a stated time, an order shall be made confirming such verdict. And Section 3856 provides for confirming of the report of the commissioners or the verdict of the jury, as the case may be, and then for a final rule or order similar to the one entered.

Something is said in the brief of the plaintiff in error as to laches on the part of the respondents in not bringing this matter of jury trial earlier to the attention of the District Court. We think the duty of prosecuting the case to a final conclusion rested as much upon the city as upon the respondents. But the delay was no doubt caused by the fact that the other action above mentioned was pending wherein it was sought to enjoin the city from taking and occupying

the premises, and to have this proceeding declared as of no effect, which was not finally determined by the decision of this court on petition for rehearing until April 13, 1912.

For the several reasons above stated our conclusion is that the respondents are entitled to a trial by jury upon their demand, which was filed March 27, 1909, and within thirty days after the filing of the certificate of the appraisers, and otherwise complied with the requirements of the law applicable to the proceeding.    The orders complained of will therefore be affirmed.                                *Affirmed.*

Scott, C. J., and Beard, J., concur.